COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, O'Brien and Raphael
Argued at Lexington, Virginia


RAYMOND TRAVIS SWINSON, SR.

                                        MEMORANDUM OPINION* BY
v.        Record No. 0637-21-3          JUDGE MARY GRACE O'BRIEN
                                        MARCH 29, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Paul A. Dryer, Judge

Eric M. Anderson, Senior Assistant Public Defender (Kieran Bartley,
Assistant Public Defender, on brief), for appellant.

Craig W. Stallard, Senior Assistant Attorney General (Mark R.
Herring,[1] Attorney General, on brief), for appellee.


The trial court convicted Raymond Travis Swinson, Sr. ("appellant") of misdemeanor abuse

and neglect of an incapacitated adult in violation of Code § 18.2-369.  Appellant contends the court

erred in finding sufficient evidence of a "knowing and willful failure to provide necessary care."

For the following reasons, we affirm his conviction.

## Background

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is

presumed correct and will not be disturbed unless it is plainly wrong or without evidence to

support it.'"  *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting

*Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)).  "In such cases, '[t]he Court does not ask

itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). Instead, we ask "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

On appeal, we review the facts in the light most favorable to the Commonwealth, the prevailing party at trial. *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018). In doing so, we discard appellant's conflicting evidence, and we regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

Appellant's adult son, Raymond Swinson, Jr. ("Raymond") suffered a traumatic brain injury in 2016 that left him mentally incapacitated and prone to seizures. Raymond required daily medications to prevent seizures, and appellant, as Raymond's primary caretaker, was responsible for administering them. Appellant suffered from a seizure disorder himself and therefore understood that timely administration of the medications was critical to preventing his son's seizures. Appellant testified that he gave Raymond his medications at 8:00 a.m. and at 8:00 p.m. each day.

According to nurse practitioner Karen Hill, Raymond's healthcare provider, three prescription medications were used to control Raymond's seizures. Two medications were administered daily, and the third was used on an emergency basis. In Hill's opinion, Raymond was at risk of a seizure if he missed even a single dose of his medications. If he missed two or more doses, he required bloodwork and a medical evaluation to adjust his medications. Hill

noted that Raymond's seizure medications included a warning to consult a medical professional if he missed more than one dose. She emphasized that the reduced blood flow associated with seizures could exacerbate Raymond's brain injury and, in the event of a prolonged seizure, he could suffer cardiac arrest.

In August 2020, Raymond lived with appellant and appellant's fiancée, Jessica Small, in Chatham. Raymond's mother, Annie Smith, lived in Staunton. On Friday, August 14, 2020, appellant, Raymond, and Small drove to Harrisonburg on an errand. They planned to drop Raymond off with his mother, but she cancelled the visit. Appellant and Small decided to leave Raymond in Fishersville with Emerald Rigger, a woman Raymond had stayed with overnight a few times in the past and had communicated with on Facebook. When appellant and Small returned to Chatham late Friday, they left Raymond at Rigger's house with no wallet, phone, or medications.

Raymond had a history of "wandering off," including an incident during a prior visit with Rigger. On Saturday, appellant called Rigger, but she did not answer. Although appellant testified that he was "concerned," he remained in Chatham through Sunday without confirming Raymond's whereabouts or notifying the authorities.

On Saturday evening, a convenience store clerk in Fishersville encountered Raymond alone in the store, eating condiments and asking for food. The clerk noticed that Raymond was wearing a Project Lifesaver wristband and called the Augusta County police, who escorted Raymond to the local station and contacted the Pittsylvania County Sheriff's Office. After unsuccessful attempts to locate family members, the police notified Adult Protective Services ("APS") and took Raymond to the hospital for assessment and medications. On Sunday, August 16, 2020, the police were able to contact Raymond's sister, who took her brother home from the hospital.

APS supervisor Lindsay Combs sought an emergency order for protective services for Raymond on Monday, August 17, and later that day, appellant contacted her for the first time. In a series of interviews, appellant told Combs that, when he left Raymond with Rigger on Friday August 14, he understood that Rigger would return Raymond to Chatham the next day. He admitted, however, that he never checked on Raymond's whereabouts until Monday August 17. Appellant also told Combs that he did not leave any medications with Raymond but acknowledged having a supply at his home in Chatham.

In an interview with Investigator Ryan Martin, appellant stated that he left Raymond with Rigger on Friday and planned to return for him "some time later in the weekend." Appellant acknowledged during the interview that he was responsible for ensuring that Raymond took his seizure medications and that, without them, Raymond was "susceptible" to seizures. Appellant admitted that he left Raymond with Rigger for the weekend without his medications. He told Martin that "it wouldn't be a big deal if [Raymond] missed medication for a couple days."

Appellant testified on his own behalf and admitted that he had two felony convictions. He denied telling Martin that Raymond could miss taking his medications "for a few days," but he did admit stating that Raymond would "end up taking [sic] a seizure" if he missed his medications "on the second day." Appellant conceded that he remained in Chatham when he could not reach Rigger on Saturday and, despite having no information concerning Raymond's whereabouts, he did not leave home until learning on Sunday evening that Raymond had "wandered off." Rather than notify the authorities, appellant and Small drove to Smith's home in Staunton to investigate whether Raymond was with his mother. Upon their arrival, appellant called 911 because, in his words, "trespass papers" were outstanding against him and he needed to "have evidence" that he was not trespassing. The police informed appellant and Small that

Raymond was "safe" and had his medications. In September 2020, Raymond's sister was appointed as Raymond's legal guardian.

In finding the evidence sufficient to convict, the court noted that appellant had "no concrete plan" for Raymond's return when dropping him off with Rigger. Further, the court stressed that "it's the number of days that lapsed before there was any location of [Raymond] that evinces a willfulness." It observed that "[t]his would be an entirely different case . . . if on Saturday morning, they reached out to [Rigger] and made inquiries and then, when they didn't get a response, . . . [they had] driven . . . from Chatham to Augusta County and started searching."

Analysis

Code § 18.2-369(A) provides in pertinent part that "[a]ny responsible person who abuses or neglects an incapacitated adult in violation of this section and the abuse or neglect does not result in serious bodily injury or disease to the incapacitated adult is guilty of a Class 1 misdemeanor." Code § 18.2-369(C) defines "neglect" as "the knowing and willful failure by a responsible person to provide . . . care . . . which . . . endangers the safety of an incapacitated adult." Our Supreme Court has held that, "in the context of Code § 18.2-369, the word 'willful' describes conduct that [is] knowing or intentional, rather than accidental, and undertaken without justifiable excuse, without ground for believing the conduct is lawful or with a bad purpose." *Correll v. Commonwealth*, 269 Va. 3, 13 (2005). It "contemplates an intentional, purposeful act or omission in the care of an incapacitated adult by one responsible for that adult's care." *Id*.

Appellant contends that the evidence was insufficient to support his conviction because it failed to prove the requisite intent. Specifically, he argues that the Commonwealth's own evidence showed that he believed Rigger had Raymond's medication and that Rigger was an appropriate temporary caregiver. The only evidence he cites in support of his contention is

- 5 -

Small's statement on cross-examination that she believed Raymond would be "safe" with Rigger for "just [one] night" because Rigger had Raymond's medications.

"In the absence of direct evidence of intent, willfulness must be established through circumstances." *Lambert v. Commonwealth*, 6 Va. App. 360, 363 (1988). *See also Correll*, 269 Va. at 13-14 (finding circumstances of an elderly victim's demise sufficient to prove willful neglect under Code § 18.2-369). "Circumstantial evidence is as acceptable to prove guilt as direct evidence, and in some cases, such as proof of intent or knowledge, it is practically the *only* method of proof." *Abdo v. Commonwealth*, 64 Va. App. 468, 475-76 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion [of guilt].'" *Rams v. Commonwealth*, 70 Va. App. 12, 37 (2019) (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).

The court made credibility determinations and rejected Small's testimony and any inference concerning appellant's perceptions about Rigger. "Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). Based on our review of the record, we conclude that the court's credibility determinations are not plainly wrong.

Furthermore, viewed as a whole, the evidence was sufficient to support the court's finding that appellant knowingly and willfully, and without justifiable excuse, endangered Raymond's health and safety by leaving him without critical seizure medication for over two days. As the court noted, appellant left his son without developing any "concrete plan" for his return. Appellant knew that Raymond had a history of "wandering off" and had strayed from Rigger's custody in the past. Appellant also agreed that Raymond was likely to have a seizure if he missed two doses of his medications. Despite this knowledge, appellant did not leave Chatham to search for Raymond until he received a message on Sunday evening that his son was missing. Even then, appellant did not notify the police or social services; instead, he drove to Smith's house and only called 911 to "have evidence" that he was not trespassing. Appellant waited until Monday to contact APS, the day that the agency sought an emergency order for Raymond's care. Based on Raymond's history of wandering and the serious risks posed by his seizure disorder, the court could reasonably conclude that appellant willfully neglected him when he took no affirmative action for three days to locate his son or to confirm he had received the medications required to prevent life-threatening seizures. *See Wagoner v. Commonwealth*, 63 Va. App. 229, 258-59 (2014) (holding that a defendant's failure to provide necessary medical care to a victim, despite awareness of the victim's burns, constituted "willfulness" under Code § 18.2-369*), aff'd on other grounds*, 289 Va. 476 (2015).

Accordingly, the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that appellant was guilty of misdemeanor abuse and neglect of an incapacitated adult. The judgment of the trial court is affirmed.

*Affirmed.*