PRESENT: All the Justices

DAVID STANLEY JAMES PIJOR

v. Record No. 161346

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE CLEO E. POWELL
December 28, 2017

FROM THE COURT OF APPEALS OF VIRGINIA

David Stanley James Pijor ("Pijor") was found guilty of perjury, in violation of Code § 18.2-434, in the Circuit Court of Fairfax County ("trial court"). The perjury conviction stemmed from testimony Pijor gave during a larceny trial in which he was acquitted. On appeal, Pijor argues that the Commonwealth was collaterally estopped from indicting him for perjury due to his previous acquittal and that the evidence was insufficient to prove he committed perjury.

I. BACKGROUND

On February 4, 2014, Pijor was tried for larceny of an animal and unlawfully entering another's property. The charges arose from the disappearance of a dog, Ben, that belonged to Pijor's ex-girlfriend, Kristy Gooch ("Kristy"). The Commonwealth's theory during the larceny trial was that Pijor took Ben after entering the home where Kristy and her parents resided, uninvited. Patti Gooch ("Patti"), Kristy's mother, testified she was home alone with Ben on the morning of September 6, 2013, when Pijor began ringing the front doorbell, calling out for Kristy or Patti to speak with him, and calling the house telephone. Patti did not respond to Pijor because she was scared and, instead, called the police from her upstairs bedroom while Ben barked at the front door. After Pijor fell silent, Patti opened her bedroom door and found Pijor

with Ben beside him. Patti told Pijor to leave and he responded he was trying to check on Kristy. As Pijor proceeded back downstairs, Patti retreated to her bedroom and closed the door. Patti opened the door "seconds" later after she realized Ben was not with her and ran downstairs, where she did not see Pijor or Ben. Patti proceeded outside but saw no sign of Pijor or Ben.

In the larceny trial, Kristy testified she and Pijor had a troubled relationship that she had been trying to end for several years and that Pijor had previously threatened to take away everything she cared about if she ended their relationship. Kristy explained that, approximately two days before Ben's disappearance, she had stopped responding to Pijor's attempts to contact her. Kristy claimed that Ben was very well behaved and never ran away despite being unrestrained frequently. Ben also wore a collar and tags that bore Kristy's name, telephone number, and home address.

Pijor testified in his own defense and acknowledged using a key he knew was hidden under a rock to let himself into the Goochs' home. Pijor explained he was concerned about Kristy's welfare and that Ben followed him as he left the house after his encounter with Patti. Once outside, Ben tried to follow Pijor, and Pijor commanded Ben to stay in the Goochs' backyard, which he did. Pijor claimed that this was the last time he saw Ben. When asked, "At any point in time have you received information on where Ben might be?" Pijor responded, "No, I haven't". When asked, "[H]ave you seen the dog since September the 6th?" Pijor said, "No". Pijor claimed Ben would chase people, animals, and dogs unless told not to and that he had run away at least once. Pijor noted he tried to find Ben and denied threatening Kristy.

Pijor's father, David Pijor ("Pijor, Sr."), testified that Pijor lived with him "for periods of time" after Ben's disappearance but that he had not seen the dog. Pijor, Sr. recounted that his

2

son left on a trip to Ocean City, Maryland the day Ben disappeared and that Pijor had tried to find Ben. The jury acquitted Pijor of both charges.

Post-trial, it was discovered Pijor had possession of Ben, and he was charged with perjury stemming from his trial testimony that he had no information regarding Ben's whereabouts after September 6, 2013 and that he had not seen the dog since that date.[1] Pijor moved to dismiss this charge and argued that principles of collateral estoppel prevented the Commonwealth from proving he perjured himself because it would require relitigating whether he stole Ben. The trial court disagreed and concluded that, although the Commonwealth could not present evidence Pijor stole Ben, it could prove that he lied about knowing where Ben was after the dog went missing.

From the day Ben disappeared, Kristy did not see either him or Pijor, except for seeing Pijor at the larceny trial. At Pijor's perjury trial, Kristy testified regarding a series of events that began five days after the larceny trial. On February 9, 2014, five days after Pijor's acquittal in the larceny trial, she saw a man in a hooded sweatshirt (i.e., a "hoodie") with the hood pulled up over his head,[2] walking a dog resembling Ben near her home. The dog carried an orange Frisbee

---

[1] The Commonwealth also indicted Pijor for the larceny of Ben on or about April 29, 2014, but the circuit court dismissed that indictment as violative of double jeopardy. *See Commonwealth v. Pijor*, Record No. 0043-15-4, 2015 Va. App. LEXIS 178, at *3 (May 26, 2015) (unpublished).

[2] A "hoodie" or "hoody" is a shirt or sweatshirt featuring a hood that can be pulled up over the head, or worn with the hood down and loosely folded about the neck. *See, e.g.*, *Brown v. Grounds*, No. CV 12-9131 DSF (AS), 2015 U.S. Dist. LEXIS 54123, at *24 (C.D. Cal. Feb. 12, 2015) (describing a "hoodie" as a sweatshirt with a hood); *United States v. Midyett*, No. 07-CR-874 (KAM), 2009 U.S. Dist. LEXIS 8865, at *9 (E.D.N.Y. Feb. 6, 2009) (same); *State v. Taylor*, 382 S.W.3d 251, 252 (Mo. Ct. App. 2012) (describing a "hoodie" as "a . . . hooded zip-up or pullover shirt"); *United States v. Garvin*, 548 Fed. Appx. 757, 758 (3d Cir. 2013) (describing a "hoody" as a hooded sweatshirt).

in its mouth. On March 1, 2014, Kristy saw the man again, wearing what appeared to be the same hoodie with the hood pulled up over his head and walking the same dog carrying the same orange Frisbee near her home. Later that evening, an orange Frisbee struck the Goochs' front door.

On March 8, 2014, Kristy saw the man in a hoodie with the hood pulled up over his head and walking with a dog carrying the orange Frisbee again while she was driving with her boyfriend, Tam Nguyen. Nguyen pulled over, and Kristy identified the pair as Pijor and Ben. Kristy testified that when she called Ben's name, "the dog immediately dropped the Frisbee and tried to pull towards me." Nguyen tried to follow Pijor but he ran with Ben in tow. Nguyen testified and confirmed he and Kristy saw Pijor walking Ben on March 8.

Detective Jacquelynn Smith testified she began tracking Pijor's movements by GPS on March 10, 2014 due to allegations that he was stalking Kristy. She arrested Pijor on April 29, 2014, with Ben in his car. Pijor told Detective Smith that he had found the dog but would not tell her when he found Ben. In the back seat of Pijor's car was a dog bowl, dog food, a leash, and a blanket covered in dog hair.

Pijor, Sr. testified that Pijor lived with him between September 6, 2013 and February 4, 2014 and that he saw his son almost every day during that period. Pijor, Sr.'s house was four to six miles from where Kristy and Nguyen saw Pijor and Ben on March 8, 2014. Pijor Sr. denied seeing Pijor with Ben or noticing any evidence that Pijor had Ben. Specifically, Pijor, Sr. testified that he saw the interior of Pijor's car regularly and that he saw no indication Pijor was transporting Ben in the vehicle. Pijor, Sr. acknowledged that Pijor occasionally visited a friend in Ocean City. Pijor offered into evidence a portion of the transcript from his first trial, which recounted his explanation of how he looked for Ben after he went missing.

The trial court found Pijor guilty of perjury. Pijor appealed his conviction to the Court of Appeals. The Court of Appeals denied Pijor's appeal, concluding in an unpublished opinion that collateral estoppel did not bar his prosecution and that the evidence supported his conviction. *Pijor v. Commonwealth*, Record No. 2065-15-4, slip op. at 2 (June 29, 2016). The Court of Appeals further held that the circumstantial evidence was competent and not inherently incredible to prove that Pijor was guilty of perjury. *Id*. at 3-5. This appeal followed.

## II. ANALYSIS

### A. Collateral Estoppel

Collateral estoppel is a doctrine of fact preclusion that is "embodied in" the Fifth Amendment "protection against double jeopardy." *Simon v. Commonwealth*, 220 Va. 412, 415, 258 S.E.2d 567, 569 (1979). "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).

> However, before the doctrine of collateral estoppel may be applied, four requirements must be met: (1) the parties to the two proceedings must be the same; (2) the factual issue sought to be litigated must have been actually litigated in the prior proceeding; (3) the factual issue must have been essential to the judgment rendered in the prior proceeding; and (4) the prior proceeding must have resulted in a valid, final judgment against the party to whom the doctrine is sought to be applied.

*Whitley v. Commonwealth*, 260 Va. 482, 489, 538 S.E.2d 296, 299 (2000).

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this [realistic and rational] approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter."

*Ashe*, 397 U.S. at 444. "Collateral estoppel . . . does not apply if it appears that the prior judgment could have been grounded 'upon an issue other than that which the defendant seeks to

5

foreclose from consideration.'" *Lee v. Commonwealth*, 219 Va. 1108, 1111, 254 S.E.2d 126, 127 (1979) (quoting *Ashe*, 397 U.S. at 444).

"The defendant bears the burden of proving that the precise issue of fact sought to be precluded was raised and determined in the prior action." *Commonwealth v. Leonard*, 294 Va. __, __, 805 S.E.2d 245, 249 (2017) (citing *Rhodes v. Commonwealth*, 223 Va. 743, 749, 292 S.E.2d 373, 376 (1982)). In *Rhodes*, the defendant was tried and acquitted of possession of phencyclidine ("PCP") based on laced cigarettes found in his car. In his subsequent trial for manufacture of PCP, Rhodes argued that collateral estoppel precluded the Commonwealth from introducing evidence of the presence of the PCP laced cigarettes in his car. His argument was grounded on the fact that the same evidence had been introduced in the possession trial of which he had been acquitted. We held that because Rhodes was unable to prove that "the precise issue of fact," i.e., the presence of PCP in his vehicle, was determined in his favor, that issue of fact remained "unfettered by the doctrine of collateral estoppel." *Rhodes*, 223 Va. at 749-50, 292 S.E.2d at 377.

Here, Pijor was first charged with larceny of the dog. At common law, larceny is defined as "the wrongful or fraudulent taking of another's property without his permission and with the intent to deprive the owner of that property permanently." *Tarpley v. Commonwealth*, 261 Va. 251, 256, 542 S.E.2d 761, 763-64 (2001). The jury acquitted Pijor of larceny of the dog. In his defense, Pijor argued that the dog tried to follow him when he left, but he told the dog to stay in the yard. Pijor claimed that that was the last time he saw the dog and that his "purpose was not to steal the dog or steal anything." When asked, "At any point in time have you received information on where Ben might be?" Pijor responded, "No, I haven't." Defense counsel next

6

asked, "And have you seen the dog since September the 6th?" Pijor responded, "No." The jury acquitted Pijor of larceny of the dog.

To convict someone of perjury, Code § 18.2-434 provides, in pertinent part, "If any person to whom an oath is lawfully administered on any occasion willfully swears falsely on such occasion touching any material matter or thing . . . he is guilty of perjury, punishable as a Class 5 felony." The evidence in the perjury trial showed that Ben was found in Pijor's possession. Kristy saw a man wearing a hoodie near her home, with the hood pulled up over his head, and walking with a dog resembling Ben carrying an orange Frisbee in its mouth on February 9, 2014, five days after Pijor's acquittal for larceny of the dog. She saw the same man in the same hoodie, with the hood pulled up over his head, with the dog and orange Frisbee again on March 1, 2014 near her home. On March 8, 2014, she again saw the man in a hoodie, with the hood pulled up over his head, and the dog with the orange Frisbee. She recognized that man as Pijor and she called the dog's name and he turned toward her. Pijor was arrested on April 29, 2014 with the dog in his car. Pijor told his father that he had "found Ben sometime, you know, a little, sometime before" he was confronted by the police on April 29, 2014.

Pijor argues that the Commonwealth was estopped from convicting him of perjury because the ultimate issue in both the larceny and perjury cases was whether he stole the dog. We disagree. In the larceny trial, it was alleged that on September 6, 2013, Pijor stole a dog belonging to Kristy. The jury in the larceny trial was instructed:

> David Pijor is charged with the crime of larceny of a dog. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime.
>
> 1) that David Pijor took and carried away the dog and,
>
> 2) that the animal belonged to Kristy Gooch and,

7

3) that the taking was against the will and without the consent of the owner and,

4) that the taking was with the intent to steal.

If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the crime as charged then you shall find David Pijor guilty but you shall not fix the punishment until your verdict has been returned and further evidence has been heard by you. If you find that the Commonwealth has failed to prove beyond a reasonable doubt any one or more of the elements of the crime then you shall find David Pijor not guilty.

The ultimate issue of fact in the larceny trial was whether on September 6, 2013, Pijor took the dog with the intent to steal him. By entry of a general verdict, Pijor was acquitted of that offense.

This general verdict requires us to examine the record and consider whether a rational jury could have grounded its verdict upon an issue other than that which Pijor seeks to foreclose from consideration here – that is, that Pijor had not seen the dog nor had he received information about the dog's whereabouts since September 6, 2013. *See Ashe*, 397 U.S. at 444. There is no indication in the record that the jury based its verdict on Pijor's statements that he had not seen nor received any information about the dog. Even if we accept Pijor's argument that the jury found him credible with respect to whether he took the dog, that finding would not support his argument that the jury also decided the precise issue he seeks to preclude. Indeed, having decided the first issue, the jury would have no need to decide the latter issue.

Therefore, because Pijor failed to prove that the precise issue of fact he seeks to preclude was determined in the larceny trial, the trial court and the Court of Appeals did not err in finding the Commonwealth was not collaterally estopped from bringing the indictment for perjury against Pijor. *See Leonard*, 294 Va. at __, 805 S.E.2d at 249 ("Collateral estoppel, as applied in criminal proceedings, becomes applicable only when the defendant's prior acquittal necessarily

8

resolved a factual issue that the Commonwealth seeks to litigate again in a subsequent proceeding.") (collecting cases).

## B. Sufficiency of the Evidence

Pijor next argues that the circumstantial evidence presented by the Commonwealth was insufficient to prove that he committed perjury in his larceny trial. We disagree.

When considering on appeal whether the evidence was sufficient to support a criminal conviction, "we review factfinding with the highest degree of appellate deference." *Bowman v. Commonwealth*, 290 Va. 492, 496, 777 S.E.2d 851, 854 (2015). The Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Williams v. Commonwealth*, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). "'Rather, the relevant question is,' upon review of the evidence in the light most favorable to the prosecution, 'whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Dietz v. Commonwealth*, 294 Va. 123, 132, 804 S.E.2d 309, 314 (2017) (quoting *Bowman*, 290 Va. at 496, 777 S.E.2d at 854) (emphasis in original).

The judgment of the trial court is presumed correct and will not be disturbed unless it is "plainly wrong or without evidence to support it." Code § 8.01-680. We have repeatedly held that "[t]hese principles apply 'with equal force' to bench trials no differently than to jury trials." *Vasquez v. Commonwealth*, 291 Va. 232, 249, 781 S.E.2d 920, 930 (2016).

"[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Dowden v. Commonwealth*, 260 Va. 459, 468, 536 S.E.2d 437, 441 (2000). "And the hypotheses which must be reasonably excluded are those

9

which flow from the evidence itself, and not from the imagination of defendant's counsel." *Turner v. Commonwealth*, 218 Va. 141, 148, 235 S.E.2d 357, 361 (1977). "Indeed, in some cases circumstantial evidence may be the only type of evidence which can possibly be produced." *Stamper v. Commonwealth*, 220 Va. 260, 272, 257 S.E.2d 808, 817 (1979). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Muhammad v. Commonwealth*, 269 Va. 451, 479, 619 S.E.2d 16, 32 (2005).

> A circumstantial fact is admitted on the basis of an inference when the inference is a probable explanation of another fact and a more probable and natural one than other explanations, if any. Evidence is seldom sufficient to establish any fact as demonstrated and beyond all doubt.

*Toler v. Commonwealth*, 188 Va. 774, 780, 51 S.E.2d 210, 213 (1949).

> In order to sustain a perjury conviction under [Code § 18.2-434], the Commonwealth ha[s] the burden of proving: (1) that an oath was lawfully administered; (2) that the defendant wilfully swore falsely; and (3) that the facts to which he falsely swore were material to a proper matter of inquiry.

*Mendez v. Commonwealth*, 220 Va. 97, 102, 255 S.E.2d 533, 535 (1979).

During Pijor's larceny trial, when asked by his counsel, "At any point in time have you received information on where Ben might be?" Pijor responded, "No, I haven't." Counsel next asked, "And have you seen the dog since September the 6th?" Pijor responded, "No." The evidence in the perjury trial was sufficient for the trial court to find beyond a reasonable doubt that as of February 4, 2014, Pijor had seen Ben since September 6, 2013 or that he had information on where the dog might be located. The evidence showed that on February 9, 2014, five days after Pijor's acquittal for larceny of the dog, Kristy saw a man wearing a hoodie with the hood pulled up over his head, walking near her home with a dog that resembled Ben who was carrying an orange Frisbee in its mouth. She saw the same man, wearing a hoodie with the hood

10

pulled up over his head, walking the same dog with an orange Frisbee again on March 1, 2014. Once again, the man and the dog were seen near her home. Later that evening, an orange Frisbee struck the Goochs' front door.

On March 8, 2014, she again saw the "same man in the same hoodie" with the hood pulled up over his head, walking with the same dog carrying an orange Frisbee on the sidewalk of Route 29 near her home. This time, Kristy called "Ben" and "the dog immediately dropped the Frisbee and tried to pull towards [her]." Kristy testified that "Mr. Pijor was the man in the hoodie. I definitely saw his face."

Pijor was tracked via GPS beginning on March 10, 2014, due to his alleged stalking of Kristy. He was arrested on April 29, 2014 with Ben in his car. When asked by Detective Smith about his possession of the dog, Pijor said he found him. When asked when he found the dog, Pijor gave no response. Pijor told his father that he had "found Ben sometime, you know, a little, sometime before" he was confronted by the police on April 29.

During argument on the motion to strike and during closing arguments, the trial court referenced the following facts:

> We know that from the evidence, that this dog Ben is missing on February the 4th. We also know that they had a bad breakup, and that according to Ms. Gooch, he was very distraught, . . . very irrational, would lash out, very stressful situation. . . . So being in possession of her dog . . . could arguably be consistent with a motive to hurt Ms. Gooch. . . . Then you have the fact that on February 9th, which is five days after he testified, she observes a guy with a hoodie with a dog that, based on the gait, she thought might be her dog.

The trial court also asked the Commonwealth,

> What inference can I draw from the fact that he did not answer the question of when he found the dog?

11

[The Commonwealth]: I think Your Honor can draw the inference that he did not want to answer that question potentially because it would get him in trouble.

The evidence was sufficient for the trial court to find that Pijor was lying when he testified during the larceny trial that he had not received any information about Ben, nor had he seen Ben. Kristy had been trying to break away from Pijor from the time they broke up from a lengthy romantic relationship in 2011 until two days before Ben disappeared. Kristy testified that after their romantic relationship ended that "[i]t was very tense and stressful. I was trying to pull away and was having trouble breaking away from that relationship. . . . [I]f I wouldn't return phone calls I would get angry texts and calls [from Pijor]." On September 4, 2013, Kristy discontinued contact with Pijor. On September 6, 2013, Ben disappeared. On February 4, 2014, Pijor testified that he had not seen Ben since September 6, 2013, nor had he received any information regarding Ben's whereabouts. On February 9, 2014, Kristy saw Pijor with Ben.

The evidence was sufficient for the trial court to conclude that indeed it was Pijor who Kristy saw with Ben on February 9. Further, the series of encounters supported the trial court's finding that all of the sightings were of Pijor and indicated an attempt on Pijor's part to taunt Kristy as furtherance of his desire to hurt her.

Finally, the evidence was sufficient for the trial court to conclude that Pijor either had seen the dog or had information as to where it was on February 4, 2014, when he testified to the contrary. It strains credulity that a dog with a collar and identification tag containing Kristy's contact information would have been missing from September 6, 2013 until February 9, 2014, not found by anyone and returned to its owner, and then suddenly and inexplicably be found by Pijor. Further, because the tags contained Kristy's contact information, the evidence was sufficient for the trial court to conclude that if someone else, other than Pijor, had come into possession of Ben, that they would have contacted Kristy. The fact that no one did prior to Pijor

12

being seen with Ben, supports the conclusion that Pijor knew where the dog was and/or had information on Ben's whereabouts at the time of his larceny trial. The trial court also could have taken into consideration that Pijor knew the dog belonged to Kristy, yet he made no effort between February 9 (the point beyond which there was direct evidence that he had Ben) and April 29 to return the dog to Kristy. Moreover, when questioned by the detective, after being found in possession of Ben, Pijor told her that he had found Ben, but would not tell her when he found Ben. It was well within the bounds of the evidence for the trial court to conclude beyond a reasonable doubt that Pijor did not fortuitously come into possession of the dog on February 9, but rather knew where the dog was five days before when he testified that he had no information on where the dog was and that he had not seen the dog.

"Since the fact finder had the opportunity of hearing and observing the witnesses, its findings are entitled to great weight. The evidence and all just and reasonable inferences therefrom must be viewed on appeal in the light most favorable to the [Commonwealth]." *Carter v. Commonwealth*, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982). In that light, a rational fact finder could have found all of the necessary elements for the crime of perjury established beyond a reasonable doubt. Accordingly, we find the evidence was sufficient to prove Pijor committed perjury in violation of Code § 18.2-434.

C. CONCLUSION

For the foregoing reasons, we find no error in the judgment of the Court of Appeals and we will affirm Pijor's conviction for perjury in violation of Code § 18.2-434.

*Affirmed*.