UNPUBLISHED

## COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Lorish

JAMES ALBERT HARTSFIELD

v.     Record No. 0750-23-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
MAY 21, 2024

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
M. Duncan Minton, Jr., Judge

(Brett P. Blobaum, Senior Appellate Attorney; Virginia Indigent
Defense Commission, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Jason D. Reed, Assistant
Attorney General, on brief), for appellee.


The trial court convicted James Albert Hartsfield of aggravated sexual battery. Hartsfield asserts that the evidence was insufficient to support his conviction. He also argues that the trial court erred by "allowing the Commonwealth to elicit inadmissible hearsay testimony regarding an anatomical drawing." He then argues that the trial court erred "by admitting a 'Virginia Individual Developmental Disability Eligibility Survey' as part of Commonwealth's Exhibit 3." After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the dispositive issue or issues have been authoritatively decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, [as] the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

In September 2021, Hartsfield was in a relationship with K.B.'s mother and lived with them and K.B.'s younger brother.[1] K.B.'s brother testified that K.B. was in her late twenties and that she had a mental disability which meant that "[s]he can't really take care of herself." For instance, K.B. could not cook for herself or maintain a job. Her speech was limited, and she usually responded to questions with one or two word answers. K.B. also attended a day program for adults with intellectual disabilities. When K.B.'s mother was unavailable, Hartsfield cared for K.B., including making her meals and transporting her to her program. K.B.'s brother testified, "[To] me and my sister he [Hartsfield] was like a father figure."

On September 13, 2021, K.B.'s brother, then a high school student, returned home from his part-time restaurant job. K.B.'s brother testified that, as he stood in the kitchen, he saw Hartsfield and K.B. in a bedroom. K.B.'s brother saw that Hartsfield had his hand down K.B.'s pants. After two or three seconds, Hartsfield saw K.B.'s brother and Hartsfield then removed his hand. K.B.'s brother called his mother, who instructed him to call 911. He called the police and reported the incident.

---

[1] We use the victim's initials in this case in an attempt to protect her privacy.

Chesterfield County Police Officer Jonathan Natoli responded to the call and noted that when he arrived, K.B. "was very upset. She was crying. She was very emotional, very upset." Officer Natoli then interviewed Hartsfield that evening, and Hartsfield denied putting his hand in K.B.'s pants.

In a later interview with Chesterfield County Police Detective Brian Simmons, Hartsfield claimed that K.B. grabbed his hand and forced it into her pants despite his protestations. Hartsfield acknowledged that K.B. was slow, but Hartsfield stated that the family did not leave K.B. alone because they had not taught her life skills. He added that he had helped care for K.B. for six years. Hartsfield characterized the incident as a misunderstanding, and he admitted that he had not explained his version of the events during his initial interview with the police.

Detective Simmons also interviewed K.B. a few weeks after the incident. Detective Simmons testified that he utilized the "child first forensic interview technique," which includes asking open ended questions that allows the interviewee to introduce the information without leading questions. Over Hartsfield's hearsay objection, Detective Simmons testified that K.B. was unable to correctly identify body parts in an anatomical diagram he provided her during the interview.

Four mental health professionals testified at trial. Michael Nichols confirmed that K.B. did not know the days of the week and could only count to 12. Nichols managed the program K.B. attended, and Nichols recalled that K.B. worked on life skills and other projects. Although K.B. attended a class about relationships between boys and girls, she did not participate, and Nichols had never seen K.B. exhibit any sexual behavior. Ashley Carter, a case manager, also treated K.B. When Carter worked with K.B., she said that K.B. could not qualify for employment. Carter testified that she did not observe K.B. engage in any sexualized behavior.

Case manager Tiffany Gerald testified that K.B. had been diagnosed with an intellectual disability. Gerald testified that K.B. "was very quiet, timid. She [K.B.] would answer with one or two words answers." Gerald also testified that she never saw K.B. display any sexualized behaviors. During her testimony, Gerald referenced documentation she had collected about K.B.'s mental condition. Over Hartsfield's objection, the Commonwealth moved to admit the documentation. The exhibit includes a collection of reports recording services provided to K.B. between June 1, 2021, and December 31, 2021. Each report contains the date and time of the services and the name of the provider. Included in the documents is a "Virginia Individual Developmental Disability Eligibility Survey" ("Survey"), conducted on February 22, 2021, by Cristalle Vilardo, a support coordinator with the Chesterfield Community Services Board. Over Hartsfield's objection arguing lack of foundation, the trial court admitted the documents, finding that the documents had been prepared in the ordinary course of business and that Gerald was a custodian of the records and had laid a proper foundation for them. The trial court further found that the Survey had been prepared to aid mental health treatment and that it was not prepared for litigation purposes.

After all of the evidence was presented, the trial court found Hartsfield guilty of aggravated sexual battery. Hartsfield now appeals to this Court.

ANALYSIS

I.  Admissibility of Evidence

Hartsfield argues that the trial court erred by "allowing the Commonwealth to elicit inadmissible hearsay testimony regarding an anatomical drawing." He also asserts that the trial court erred by admitting the Survey.

"[T]he determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." *Pulley v. Commonwealth*, 74

- 4 -

Va. App. 104, 118 (2021) (quoting *Jones v. Commonwealth*, 71 Va. App. 597, 602 (2020) (alteration in original)). "A reviewing court can conclude that 'an abuse of discretion has occurred' only in cases in which 'reasonable jurists could not differ' about the correct result." *Id.* (quoting *Atkins v. Commonwealth*, 68 Va. App. 1, 7 (2017)).

Hartsfield argues that Detective Simmons's testimony that K.B. was unable to correctly identify the relevant body parts in the anatomical drawing he used when interviewing K.B. was inadmissible hearsay. The trial court overruled Hartsfield's objection and allowed the testimony.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). "Hearsay is inadmissible unless permitted by an exception, and the party offering the evidence must 'clearly show' that the exception applies." *Khine v. Commonwealth*, 75 Va. App. 435, 444-45 (2022) (quoting *Clay v. Commonwealth*, 33 Va. App. 96, 104 (2000) (en banc), *aff'd*, 262 Va. 253 (2001)).

Here, Detective Simmons stated only that K.B. could not identify body parts from the anatomical drawing he presented her. Detective Simmons did not testify about any statements K.B. made or may have made regarding the drawing. Instead, Detective Simmons only testified about what he observed from K.B. during her interview. Consequently, Detective Simmons's testimony about K.B.'s response to the drawing did not contain hearsay as Detective Simmons did not provide any out-of-court statement used to prove the truth of the matter asserted. Therefore, the trial court did not abuse its discretion in admitting Detective Simmons's testimony.

Hartsfield also argues that the trial court abused its discretion by admitting the "Virginia Individual Developmental Disability Eligibility Survey." Specifically, Hartsfield asserts that the trial court improperly admitted the Survey under the business records exception to the rule against hearsay.

- 5 -

The business records exception is set forth in Rule 2:803(6) of the Virginia Rules of Evidence, and provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . [a] record of acts, events, calculations, or conditions if: (A) the record was made at or near the time of the acts, events, calculations, or conditions by — or from information transmitted by — someone with knowledge; (B) the record was made and kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making and keeping the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 2:902(6) or with a statute permitting certification; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Here, the contested exhibit includes contemporaneously recorded entries noting developmental services the Chesterfield Community Services Board provided to K.B. over a period of time. The entries included the date and time of the services, the name of the provider, and the date the report was prepared and reviewed. At trial, Gerald identified the records, testified that she was K.B.'s case manager, and established that she was the custodian of the records. As part of her duties, Gerald collected "documentation regarding [K.B.'s] mental conditions," including the disability evaluation prepared by Gerald's colleague. The disputed Survey was recorded on the same day that the data about K.B. in the Survey was collected. The Survey states that it includes routine intake information which demonstrates that the Survey was prepared as part of regularly conducted business activity. The facts and circumstances support the trial court's conclusion that the Survey was a properly authenticated business record. Consequently, we cannot say that the trial court abused its discretion by admitting the Survey.

## II. Sufficiency of the Evidence

Hartsfield argues that the evidence is insufficient to support his conviction. Specifically, Hartsfield argues that the Commonwealth failed to prove that any sexual abuse occurred, that any

sexual abuse was accomplished through K.B.'s mental incapacity, and that Hartsfield knew or should have known of K.B.'s mental incapacity.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Pijor*, 294 Va. at 512). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Williams v. Commonwealth*, 278 Va. 190, 193 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Under Code § 18.2-67.3(A)(2), "An accused is guilty of aggravated sexual battery if he or she sexually abuses the complaining witness, and . . . [t]he act is accomplished through the use of the complaining witness's mental incapacity or physical helplessness." Code § 18.2-67.10(3) defines mental incapacity as the "condition of the complaining witness existing at the time of an offense . . . which prevents the complaining witness from understanding the nature or consequences of the sexual act involved in such offense and about which the accused knew or should have known." Code § 18.2-67.10(6)(a) defines sexual abuse as "an act committed with the intent to sexually molest, arouse, or gratify any person, where . . . [t]he accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts."

Here, K.B.'s brother saw Hartsfield in the bedroom with K.B. with Hartsfield's hand down K.B.'s pants. Hartsfield only removed his hand once he saw K.B.'s brother, who immediately called his mother, who instructed him to contact the police. The testimony of K.B.'s brother, along with the documentation and other evidence, established that K.B. was mentally incapacitated and

that Hartsfield was well aware of her intellectual disabilities. Hartsfield lived with K.B. and often helped care for her. K.B.'s brother explained—and the documentation confirmed—that K.B. was unable to care for herself or maintain employment, and she rarely spoke in anything more than one or two word replies to questions. The evidence fully supports the trial court's conclusion that Hartsfield sexually abused K.B. through the use of her mental incapacity of which he was well aware. Consequently, we cannot say that no rational factfinder could have found the evidence sufficient for Hartsfield's conviction of aggravated sexual battery.

## CONCLUSION

For all of these reasons, we do not disturb the trial court's judgment, and we affirm Hartsfield's conviction.

*Affirmed.*