COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Athey and Senior Judge Petty
Argued by videoconference


ALSHARRIEF MALIK MAHONEY

MEMORANDUM OPINION* BY
v.  Record No. 0454-24-3  JUDGE WILLIAM G. PETTY
MAY 6, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Christopher Clemens, Judge

Sheila Moheb-khosrovi (Moheb Legal Defense, PLLC, on briefs),
for appellant.

David A. Stock, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Alsharrief Malik Mahoney appeals his convictions as a principal in the second degree to

second-degree murder, use of a firearm in the commission of murder, and maliciously shooting

at an occupied vehicle.[1]  He argues that the evidence was insufficient to prove that he was

present during the shooting or that he shared the gunman's criminal intent.  We agree that the

Commonwealth failed to prove that Mahoney shared the gunman's intent.[2]  Accordingly, we

reverse the trial court's judgment and vacate Mahoney's convictions.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The jury verdict and sentencing order do not state that Mahoney was convicted of being
a principal in the second degree.  However, the jury instructions make clear that he was.  *See*
Code § 18.2-18 ("[E]very principal in the second degree . . . may be indicted, tried, convicted
and punished in all respects as if a principal in the first degree.").

[2] We do not address Mahoney's evidentiary challenges because the evidence was
insufficient to convict Mahoney even with the challenged testimony.  Also, because we conclude
that the evidence of shared intent was insufficient, we need not address whether the evidence
established that Mahoney was actually or constructively present at the scene of the crime.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Mahoney's cousin Jaleel Tate was shot in the parking lot of the Panorama Apartments in Roanoke, Virginia, on May 8, 2023, and later died of his wounds. According to Tate's wife, Mahoney was "like a brother" to Tate, but they stopped seeing each other after a falling out in 2012. Even so, Tate continued to refer to Mahoney as his "brother" or "Sha." Tate lived at Panorama Apartments with his roommate, Rashar Platto, who also had the nickname "Sha," and Tate's stepbrother, Jayshon Hammond. Mahoney lived elsewhere in the city.

Tate called his wife shortly after 8:00 p.m. on May 8 and told her that he "can't be in this city anymore with Sha." She heard gunshots 10 to 15 minutes into the phone call. Panorama resident Autumn Allis also heard gunshots between 8:00 and 8:30 p.m. She looked out her window and saw a Black man carrying a firearm and wearing a white shirt and jeans enter a white Chevrolet Lumina and drive away. Allis did not see anybody else inside the Lumina. Madison McDaniel also heard the gunshots and went outside to assist. Tate was lying wounded on the ground, and McDaniel heard him say that "his brother did it."

Starting at 8:24 p.m., seven people called 911 to report the shooting. The police arrived at 8:27 p.m. and found Tate lying on the ground covered in blood next to a beige Mazda. Tate told the police that he had been in the driver's seat of the Mazda when he was shot. The Mazda's driver's side window was shattered, and there were multiple bullet holes in the door.

- 2 -

Platto's silver BMW was parked next to the Mazda. Inside the BMW, the police found a box of ammunition and a black bag containing a 9mm firearm and a .45 caliber firearm. They also found a stack of money in the driver's seat covered in blood. Platto was present when the police arrived and told them that he had taken the money from someone who had taken it from Tate after the shooting.

There were 11 .40 caliber cartridge casings in the area, most of which were between the Mazda and BMW. The police also recovered a bullet fragment from the parking lot, a bullet from the Mazda floorboard, and three bullets from Tate's body during the autopsy. All of the cartridge casings and bullets had been fired from the same gun; none were fired from either of the guns recovered from Platto's BMW.

The police learned that Mahoney's wife owned a white Chevrolet Lumina. Mahoney was recorded driving to work in that vehicle on the morning of May 8. He left work around 2:00 p.m. in the same car and drove home.

Surveillance footage of the scene depicted the street leading to the apartment parking lot. Another camera angle depicted the parking lot itself. There was a blind spot between the two camera angles. Tate parked his Mazda in the parking lot at 8:10 p.m. but did not exit his vehicle. At 8:18 p.m., Tate backed up and drove to the blind spot between the cameras. At 8:21:35 p.m., Platto entered the parking lot in his BMW and parked next to Tate.

At 8:21:40 p.m., the white Lumina entered the parking lot. The driver was wearing a white shirt, similar to the shirt worn by the gunman, and was the only visible occupant. Seconds later, a bystander in the parking lot can be seen dropping items she was carrying and seeking cover. The Lumina exited the parking lot about 30 seconds after it arrived.

At 8:25 p.m., Mahoney is seen running toward the parking lot. He did not appear on the parking lot camera. A few seconds later, the Lumina reappeared on the entrance road to the

parking lot. Mahoney approached the Lumina from the parking lot area, spoke to the driver for several seconds, and entered the passenger seat. The Lumina then drove away. Despite an extensive search, the police were never able to locate the Lumina.

Mahoney's federal probation officer Dennis Gardner testified that he was "an employee of the federal government" who had contact with Mahoney every few months as part of his employment. He generally contacted Mahoney through a phone number ending in 9375. On May 11, 2023, Mahoney called Gardner and reported that he had changed his number to one ending in 3106. Mahoney did not say why he had changed his number.

Cell site data showed both of Mahoney's phones traveling together on the night of May 8. Both phones pinged a tower near the Panorama Apartments between 8:21 and 8:26 p.m. before traveling back to Mahoney's house. Mahoney did not call 911 that night from either number.

That same night, Mahoney informed his boss that he would not be at work the next day because of a death in the family. Mahoney went to work on Monday, May 11, driving a blue Subaru. He told his boss "that somebody had shot and killed his cousin." His boss let Mahoney leave work, and the police arrested Mahoney the next day.

The jury convicted Mahoney of being a principal in the second degree to second-degree murder, use of a firearm in the commission of murder, and maliciously shooting at an occupied vehicle. The trial court sentenced Mahoney to 38 years' imprisonment with 13 years suspended.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does

not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Generally, a "principal in the second degree . . . may be indicted, tried, convicted and punished in all respects as if a principal in the first degree." Code § 18.2-18. A principal in the second degree "is one who is present, actually or constructively" and "assist[s] the perpetrator in the commission of the crime." *Thomas v. Commonwealth*, 279 Va. 131, 156 (2010) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 482 (2005)). "Mere presence during the commission of a crime and subsequent flight do not constitute sufficient evidence to convict a person as a principal in the second degree." *Moehring v. Commonwealth*, 223 Va. 564, 567 (1982). Neither do mere presence and consent. *Rollston v. Commonwealth*, 11 Va. App. 535, 539 (1991). To be guilty as a principal in the second degree, the defendant must be "guilty of some overt act done knowingly in furtherance of the commission of the crime" or while sharing the principal's criminal intent. *Thomas*, 279 Va. at 156 (quoting *McMorris v. Commonwealth*, 276 Va. 500, 505 (2008)). "[P]roof that a person is present at the commission of a crime without disapproving or opposing it" is evidence that he was aiding and abetting the offense but is sufficient to convict only "in connection with other circumstances." *Id.* (alteration in original) (quoting *Foster v. Commonwealth*, 179 Va.

96, 100 (1942)). "The test is whether or not [the defendant] was encouraging, inciting, or in some manner offering aid in the commission of the crime." *Id.*

Mahoney argues that the Commonwealth failed to prove that he was present at the scene or that he shared the shooter's intent. The Commonwealth concedes that Mahoney did not shoot Tate. Nevertheless, it responds that Mahoney aided the unknown shooter by lending the shooter his wife's car, making Mahoney guilty as a principal in the second degree. We disagree with the Commonwealth because the mere fact that Mahoney allowed another to drive his wife's vehicle is insufficient to establish that he did so to assist the shooter in killing Tate.

Our opinion in *Littlejohn v. Commonwealth*, 24 Va. App. 401 (1997), is particularly instructive here. After murdering two adults and three children, Christopher Goins walked to a nearby store and entered a car driven by Littlejohn, who drove away. *Id.* at 404, 407. Littlejohn and Goins had a sexual relationship, and there was evidence that "Littlejohn harbored animosity toward [one of the victims] four months before the murders." *Id.* at 405, 410. Littlejohn later falsely told the police that she had not seen Goins that day, and the police found an unused .45 caliber cartridge similar to the ammunition used in the murders under Littlejohn's bed. *Id.* at 407-08. Yet we held that the evidence was insufficient to prove that "Littlejohn knew *beforehand* that Goins intended to kill or shoot the people in the apartment." *Id.* at 410 (emphasis added). Indeed, there was no evidence that Goins entered the apartment with the intent to commit murder rather than "the possibility that something that occurred in the apartment caused Goins to react spontaneously." *Id.* at 410-11, 413. And Littlejohn's "suspicious conduct" after the murders did not prove that she knew beforehand that Goins would commit the murders.[3] *Id.* at 412.

---

[3] Although Littlejohn had been charged as an accessory before the fact rather than a principal in the second degree, both charges require the Commonwealth to prove that the defendant knew the principal's criminal intent and encouraged, incited, or aided the principal's

The evidence in this case likewise fails to establish that Mahoney knew about the shooter's intent when he allowed him to drive the Lumina. Indeed, as in *Littlejohn*, there is no evidence that the shooter even intended to shoot Tate when he arrived at Panorama Apartments. At oral argument the Commonwealth conceded that there was no evidence to establish when the gunman adopted the intent to kill. Whether he went to the apartment complex intending to kill Tate or whether he killed him as a result of an illicit transaction gone bad was never established. In fact, the Commonwealth could not even establish the gunman's identity. It may be reasonable to infer that Mahoney and the gunman traveled to the Panorama area together. It is also reasonable to infer that Mahoney was in the vicinity of the shooting and that he left with the gunman. But any other connection between Mahoney and the gunman was speculative. The gunman was alone when he arrived at the parking lot. It is unknown where Mahoney was or what he was doing during the shooting. There was no eyewitness testimony about the shooting itself, which raises the possibility that it was spontaneous rather than planned. And, although not required, there was no evidence of motive, for either Mahoney or the unknown gunman. In sum, the record lacks any evidence that Mahoney lent the Lumina to the shooter for the specific purpose of shooting Tate.

Tate's statements at the scene are also insufficient to prove beyond a reasonable doubt that Mahoney was guilty as a principal in the second degree. Tate expressed concern to his wife about "Sha," but the record reveals that there was another person at the scene nicknamed "Sha." Similarly, inferring that Tate's statement that his "brother did it" referred to Mahoney is negated by all the evidence that Mahoney was not the gunman. While the Commonwealth points to the totality of the evidence to support its argument, "[c]onvictions cannot rest upon speculation and

commission of the crime. *Rollston*, 11 Va. App. at 540-41. That the Commonwealth failed to do so in *Littlejohn* supports our conclusion that it failed to do so here.

conjecture." *Goldman v. Commonwealth*, 74 Va. App. 556, 567 (2022) (quoting *Littlejohn*, 24 Va. App. at 415).

Finally, the fact that Mahoney left the scene with the shooter in a car that the police were unable to locate does not demonstrate that Mahoney knew of the shooter's intent beforehand. *See, e.g.*, *Frye v. Commonwealth*, 231 Va. 370, 389 (1986) (holding that the defendant's "presence and subsequent flight, without more, were insufficient to make him a principal in the second degree"); *Moehring*, 223 Va. at 568 (holding that the defendant's "mere acceptance . . . of a ride in the stolen vehicle . . . did not in any way aid" the thief); *Hampton v. Commonwealth*, 32 Va. App. 644, 652 (2000) (holding that the defendant's transition from the back seat to the front passenger seat of a stolen vehicle was "consistent with the hypothesis that he did so for his own comfort and convenience" and not because he approved or assisted in the carjacking). There is no direct evidence that Mahoney knew that Tate had been shot when he entered the Lumina with the shooter. Nor was there evidence that Mahoney assisted the shooter in concealing the Lumina from the police. But even if the Commonwealth had presented such evidence, merely trying to conceal evidence would be insufficient to show that Mahoney knew about the shooter's intent beforehand. *Littlejohn*, 24 Va. App. at 412. Accordingly, the evidence was insufficient to convict Mahoney as a principal in the second degree.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is reversed and Mahoney's convictions are vacated.

*Reversed and final judgment.*