COURT OF APPEALS OF VIRGINIA

Present: Judges Causey, White and Frucci

SANDRA D. SUMMERS

v.     Record No. 1772-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE KIMBERLEY SLAYTON WHITE
MARCH 31, 2026

FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
C. Peter Tench, Judge Designate

(Monica Tuck, Assistant Public Defender; Virginia Indigent Defense
Commission, on briefs), for appellant.

(Jason S. Miyares,[1] Attorney General; Justin B. Hill, Assistant
Attorney General, on brief), for appellee.

The trial court convicted Sandra D. Summers of driving under the influence of marijuana

and sentenced her to 30 days in jail, all suspended. On appeal, she challenges the sufficiency of

the evidence to sustain her conviction. Finding no error, we affirm the trial court's judgment.[2]

BACKGROUND[3]

Around 5:30 p.m., Franklin Police Officer Kristen Miller stopped Summers as she drove

away from a gas station because Summers's car had no safety inspection sticker. Miller approached

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

[3] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that

Summers's car and smelled "a strong odor of marijuana." Miller asked Summers if she had ingested any marijuana that day. Summers said she "smoked two blunts around lunch time." Miller asked Summers to get out of the car to perform field sobriety tests. Summers's performance on the tests indicated that she was impaired. Miller arrested Summers and asked her to consent to a blood draw. Summers consented to the blood draw but warned Miller that "she was going to be full of marijuana" because she had "smoked four blunts" throughout the day. Miller transported Summers to the hospital, and her blood was drawn. Summers's blood analysis indicated .017 milligrams of THC per liter.

At trial, Dr. Autumn Massiello, a forensic toxicologist, testified to performing the blood analysis for Summers's case and the results of that analysis. Summers's THC blood concentration was .017 milligrams per liter, which Massiello said was "relatively higher" than the average marijuana DUI blood draw, which is around .005 to .006 milligrams per liter. That level of concentration indicated recent use, chronic use, high potency marijuana usage, or a combination thereof. Massiello clarified that THC "blood concentration does not correlate with intensity of effects." Rather, "any amount of THC in the blood can have an impairing effect" because THC dissipates from the bloodstream quickly and "distributes into fatty tissue."

Massiello also explained that THC causes "the perception altering effects" of marijuana. Those effects include a "decline in attentiveness," which makes "[d]rivers . . . easily distracted." A "decline in short term memory," which may cause drivers to forget "where they are going." A user's perception of "time and space" may be altered, and there is "a decline in balance and coordination." Therefore, a driver's "ability to understand a new driving pattern" and maintain "safe driving behavior within that pattern" is affected. The trial court emphasized Summers's

conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

"flunked" field sobriety tests and Massiello's testimony that "any amount of THC in the body can affect the brain." The trial court convicted Summers for driving under the influence of marijuana. This appeal followed.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Summers argues that the evidence was insufficient to prove she was under the influence to the extent that it "impaired her ability to drive safely." She highlights Code § 18.2-266(iii) which forbids driving while intoxicated "to a degree which impairs [one's] ability to drive or operate any motor vehicle . . . safely." She argues that the evidence did not link her marijuana

consumption to an inability to drive safely. In support, she emphasizes that she was "stopped for an equipment violation" and that there was "no evidence that she drove in an unsafe manner." Essentially, Summers argues that Code § 18.2-266(iii) requires proof that the defendant was actually driving in an unsafe manner. We disagree.

It is "unlawful for any person to drive or operate any motor vehicle . . . while such person is under the influence of any . . . drug . . . to a degree which impairs his ability to drive or operate any motor vehicle . . . safely." Code § 18.2-266(iii). Test results concerning the concentration of marijuana in a defendant's bloodstream while driving "shall be admissible . . . if other competent evidence has been presented to relate the presence of the drug . . . to the impairment of the accused's ability to drive" safely. Code § 18.2-268.10(A). Impairment "may be proved by circumstantial evidence." *Kelley v. Commonwealth*, 69 Va. App. 617, 628 (2019) (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 471 (2000)). "[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Id.* at 629 (quoting *Pijor*, 294 Va. at 512). "The court . . . trying the case involving a violation of [Code § 18.2-266(iii)] . . . shall determine the innocence or guilt of the defendant from all the evidence concerning his condition at the time of the alleged offense." Code § 18.2-268.10(D).

Miller smelled a "strong odor" of marijuana coming from Summers's car, and Summers admitted to smoking "two blunts" at lunch time and "four blunts" throughout the day. Around 5:30 p.m., when Miller conducted the stop, Summers "flunked" the field sobriety tests. Her blood analysis indicated a THC concentration significantly above what the Department of Forensics usually sees for marijuana DUI cases. Massiello gave uncontroverted expert testimony to the general effects of THC on a person's cognition and how it impacts the ability to drive safely.

- 4 -

Summers mischaracterizes Massiello's testimony as establishing that "the concentration of THC in an individual's blood has no relationship with the intensity of effect." Massiello clarified that there is no reliable concentration of THC that can provide a per se limit, like there is for alcohol, because THC dissipates from the bloodstream "very quickly" and deposits into the "fatty tissue of the brain." In fact, "any amount of THC in the blood can have an impairing effect." Thus, in contrast to the statutory limit for alcohol, "there is no safe concentration of THC" that can be indicated by a blood test. Even individuals with low amounts of THC in their bloodstream could be unsafe while driving because THC "doesn't stay in the blood. It distributes into the brain." The results of Summers's blood analysis were corroborated by "other competent evidence" relating her marijuana consumption "to the impairment of [her] ability to drive" safely. Code § 18.2-268.10(A). The trial court's determination was neither unsupported by evidence nor plainly wrong and, thus, will not be disturbed on appeal. *Pijor*, 294 Va. at 512.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*