COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Beales, Causey and Senior Judge Petty
Argued by videoconference


TRISTAN ANTHONY POOR
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0798-23-1                      JUDGE WILLIAM G. PETTY
                                                    NOVEMBER 19, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
William H. Shaw, III, Judge Designate

Kelsey Bulger, Senior Appellate Attorney (Virginia Indigent Defense
Commission, on briefs), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Tristan Anthony Poor of four counts of

forcible sodomy of a child under 13, one count of attempted forcible sodomy of a child under 13,

and one count of indecent liberties of a child under age 15 by one in a supervisory relationship.

Poor challenges the sufficiency of the evidence to sustain his convictions, contending that the

Commonwealth failed to prove that he was the person who committed the crimes. Finding no error,

we affirm the trial court's judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In

doing so, we discard any of appellant's conflicting evidence, and regard as true all credible evidence

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

In 2020, Poor was married to Jennifer Poor (Jennifer), G.S.'s mother. They lived together in a house in Hampton. At the time of trial, G.S. was seven years old; in 2020, when the incidents occurred, she was five years old. G.S. called Poor "Daddy," even though he was her stepfather. Although Poor occasionally had male friends at the house, G.S. did not like them and did not interact with them. Jennifer explained that Poor put G.S. to bed every night and that Poor was alone in the room with the child. Poor was also alone in the house with G.S. in August 2020 when Jennifer was in the hospital giving birth.

Before G.S. testified, the trial court questioned her and determined that she was competent to testify. G.S. testified that when she lived with "Mommy" and "Daddy," on more than five occasions, "Daddy" put his penis in her mouth. She stated that she was alone in her bedroom at night with "Daddy" during each incident. She emphasized that neither "Papa" nor any other man had put his penis in her mouth, only "Daddy" did. When asked at trial if she saw the man who abused her in the courtroom, she looked around and claimed that she did not see him. After standing up and searching the courtroom, she began to cry.

In the fall of 2020, G.S. told Jennifer that Poor had sexually abused her. Jennifer discussed the issue with G.S. three times and asked her to verify the times and describe what had occurred. Jennifer "eventually confronted Mr. Poor." He became "very aggressive" and denied the accusations. He told Jennifer that if she told anyone, he would kill her and the children. Poor also physically attacked Jennifer.

On cross-examination, Jennifer admitted that she had pending felony child neglect charges arising from the charges against Poor. Regarding false allegations she made that Monique Beasley, the biological grandmother of G.S.'s half-sister, and her husband were mistreating G.S., she

- 2 -

explained that she "was trying to weigh out [her] options in the very beginning, because [she] was shocked." She acknowledged that she did not contact the police about the reported sexual abuse, but stated that she did not do so because of Poor's threats.

In December 2020, G.S. moved into the home of Beasley. This angered Poor, and he became very worried that G.S. would tell Beasley what had happened. According to Jennifer, Poor said "my God, she's going to say something to them and I'm going to go to jail." G.S. reported the abuse to Beasley in December 2020. Upon learning of the abuse, Beasley contacted Child Protective Services (CPS). CPS provided a safety plan for G.S., and G.S. continued to live with Beasley.[1] G.S. called Beasley "Nana" and called Beasley's husband "Papa." When Jennifer called CPS and made accusations against Beasley and her husband, G.S. was placed in foster care for 30 days. But when the accusations were declared unfounded, G.S. returned to Beasley's residence.

The trial court denied Poor's motion to strike and renewed motion to strike. The jury found Poor guilty of all charges.

## ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier

---

[1] At the time of trial, Beasley and her husband had temporary sole custody of G.S. and her two half-sisters.

of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). As the Supreme Court has recently made clear:

> [A]n appellate court is *required* to "review the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court[,]" *Commonwealth v. Perkins*, 295 Va. 323, 323 (2018) (internal quotation marks omitted) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)), and to "accord the Commonwealth the benefit of all reasonable inferences deducible from the evidence." *Brown v. Commonwealth*, 278 Va. 523, 527 (2009). An appellate court may neither find facts nor draw inferences that favor the losing party that the factfinder did not. This remains so even when the factfinder *could* have found those facts or drawn those inferences but, exercising its factfinding role, elected not to do so. If, viewed in this manner, the evidence and the supporting inferences are "sufficient to support the conviction, the reviewing court is not permitted to substitute its own judgment for that of the trier of fact, even if its opinion might differ from the conclusions reached by the trier of fact." *Jordan v. Commonwealth*, 286 Va. 153, 156-57 (2013). An appellate court that fails to defer to the factfinder in such a circumstance has committed "an abuse of [its] appellate powers[.]" [*Commonwealth v.*] *Barney*, 302 Va. [84,] 97 [(2023)].

*Commonwealth v. Garrick*, 303 Va. 176, 182 (2024) (second through fourth alterations in original).

Settled law holds that "a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005). "As we have noted, '[b]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished.'" *Id.* at 88 (alteration in original) (quoting *Garland v. Commonwealth*, 8 Va. App. 189, 192 (1989)).

Poor argues that the evidence failed to prove that he was the perpetrator of the crimes. He asserts that the Commonwealth's evidence "exonerated" him because G.S. did not identify him at trial.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). On appeal, we review the trier of fact's determination regarding the identity of the criminal actor in the context of "the totality of the circumstances." *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 249 (1992)).

It is well-established that in considering a sufficiency challenge, "[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). As with any element of an offense, identity may be proved by direct or circumstantial evidence. *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Simon*, 58 Va. App. at 206 (alteration in original) (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)). "While no single piece of [circumstantial] evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Ervin v. Commonwealth*, 57 Va. App. 495, 505 (2011) (en banc) (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)). "In other words, in a circumstantial evidence case . . . the accumulation of various facts and inferences, each mounting upon the others, may indeed provide sufficient evidence beyond a reasonable doubt" of a defendant's guilt. *Id.*

The "conclusions of the fact finder on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness's] testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "Where credibility issues are resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong." *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010).

Here, the jury accepted G.S.'s testimony despite her failure to identify Poor in court as the man who sexually abused her. Throughout the investigation and at trial, she consistently stated that "Daddy" was the one who committed the offenses and that neither "Papa" nor any other man had ever put his penis in her mouth. Testimony proved that G.S. referred to Poor as "Daddy," and at trial she emphasized that "Daddy" was her abuser. G.S. lived with Jennifer and Poor during the time frame listed in the indictments and evidence proved that Poor put her to bed every night by himself, thus proving he had the opportunity to commit the crimes. Further, Poor was alone in the house with G.S. when Jennifer was in the hospital to have a baby. G.S. reported the incidents to both Jennifer and Beasley not long after they occurred. Finally, when confronted by Jennifer, Poor essentially admitted he was the subject of G.S.'s allegations by first threatening Jennifer if she told anyone and then panicking when he learned G.S. had moved in with Beasley.

The jury permissibly rejected Poor's argument that someone else committed the offenses, or that they did not occur at all. The record supports the jury's credibility determination. G.S.'s

testimony along with the other evidence established that Poor committed the offenses. "[T]here can be no relief" in this Court if a witness testifies to facts "which, if true, are sufficient" to support the conviction "[i]f the trier of the facts" bases its decision "upon that testimony." *Smith*, 56 Va. App. at 718-19 (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)).

## CONCLUSION

For the foregoing reasons, we find that the evidence was sufficient to prove Poor's guilt beyond a reasonable doubt, and we affirm his convictions.

*Affirmed.*