COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judge Chaney and Senior Judge Humphreys
Argued at Richmond, Virginia


KILANTE D. TOWNSEND, SOMETIMES KNOWN AS
 KILANTE DASEAN TOWNSEND
                                             MEMORANDUM OPINION[*] BY
v.      Record No. 0573-24-2               CHIEF JUDGE MARLA GRAFF DECKER
                                                   MARCH 4, 2025
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
                       Donald C. Blessing, Judge

           (John E. Robins, Jr.; Dan Miller & Associates PC, on briefs), for
           appellant. Appellant submitting on briefs.

           Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
           Attorney General, on brief), for appellee.


       Kilante Dasean Townsend appeals his convictions for first-degree murder and two counts of

larceny of a firearm in violation of Code §§ 18.2-32 and -95.[1] He contends the trial court erred by

refusing to strike a juror for cause. He also challenges the sufficiency of the evidence to sustain his

convictions. We hold the trial court did not err and affirm the convictions.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] On the joint motion of the parties, the trial court set aside the jury's guilty verdict for
grand larceny of a motor vehicle based on a failure to prove value.

BACKGROUND[2]

I. The Killing

On December 22, 2019, Lloyd Johnson was scheduled to meet his nephew, Allen Newsome, at Newsome's home. Johnson was seventy-five years old and took multiple prescription medications. He required monthly blood transfusions and "didn't go [out] much." A few weeks after each transfusion, he would begin to get weaker, and by the time the next one was due, he would "ha[ve] a hard time walking to and from [his] mailbox." Johnson also had an enlarged heart and severe atherosclerosis, which reduced the amount of blood his heart was capable of pumping and contributed to his weakness. Newsome had last seen his uncle three days before they were scheduled to meet. Johnson was "weak" that day and was "due for [his next trans]fusion the following week."

Newsome became concerned when Johnson, who was always punctual, did not arrive at the designated meeting time. He contacted Melvin Moore, another of Johnson's nephews, and asked Moore to check on the elderly family member. Moore went to Johnson's home and saw that his car, a Toyota Avalon, was missing from the driveway. Moore noticed that the sliding door to the basement was unlocked. In the basement under some carpets, he found Johnson's dead body, and he saw dried blood on the floor. He immediately left the house and called 911.

Johnson customarily kept his house tidy and his daily medications organized. After the killing, however, Johnson's house was completely ransacked and looked like "a tornado had gone

---

[2] On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn" from that evidence. *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

through." The keys to Johnson's car, as well as several other sets of keys, were missing from the hook in the kitchen where he kept them.

Johnson's autopsy revealed that he had been "beaten severely" and "stabbed repeatedly." He died from multiple stab wounds. He sustained three stab wounds to his head and neck, twelve to his torso, and four to his upper extremities. The medical examiner noted that "[m]any of the[] wounds penetrated the chest and abdominal cavities, resulting in injury to the left jugular vein, heart, left lung, liver, spleen, duodenum, and retroperitoneal space."

## II. The Police Investigation

At the time of the murder, Townsend lived with his grandmother in a residence next door to Johnson's house. At about 10:30 p.m. the day before Johnson's body was discovered, Virginia State Police Trooper Jonathan Campbell initiated a traffic stop of Johnson's Toyota Avalon in Buckingham County. The Avalon initially came to a stop but accelerated away as the trooper approached it. During a police pursuit, the car veered off the road and crashed.[3] Townsend was the driver and only occupant. The car landed on its side, "almost on its roof," and numerous articles from the car were found "laying in the middle of the road."

Just after the crash, Trooper Campbell conducted a pat down of Townsend. In his pants pocket, the trooper found a brown wallet containing Johnson's driver's license and a concealed-carry permit in Johnson's name. In the roadway, the police found many pill bottles bearing Johnson's name. Also on the ground outside the car, they recovered a Ruger EC9s 9mm pistol and a Taurus .357 Magnum revolver.

Down an embankment from the crash site was a bag containing an empty Clorox bottle, blood-stained paper towels, a black wallet containing another driver's license issued to Johnson, and

---

[3] Trooper Campbell last clocked the Avalon traveling at 122 miles per hour before it crashed.

- 3 -

a name tag also bearing his full name. The keys to the Toyota Avalon, as well as keys to Johnson's truck and other sets of keys that he had kept in his home, were inside the crashed car.

Townsend was treated at the hospital for injuries sustained in the crash and then released. He threw away the shoes and clothes he had been wearing at the time of the collision. After police developed Townsend as a suspect in Johnson's murder, they retrieved the shoes and clothes from the trash at his grandmother's home. Footprints and photographs of footprints collected near the sliding glass door to Johnson's basement and in the vicinity of his body were consistent with impressions of the shoes Townsend was wearing at the time he crashed the Avalon. DNA testing proved that Johnson's blood was on the bottom of Townsend's shoes. Additionally, one of the blood-stained gloves Townsend was wearing at the time of the crash had Johnson's DNA on it. Police also learned during their investigation that around Christmas of 2019, Townsend told Olivia Pelli, his girlfriend at the time, that he stole a car he was driving. And Townsend admitted to Pelli that he "killed someone."

In Johnson's house, after the murder, police found empty boxes for the Ruger and Taurus firearms recovered from the scene of the car crash.[4] Although Johnson was known to keep his home neat, the boxes were lying on the floor in the middle of a hallway near the living room and kitchen, in what was clearly not "the ordinary place [for] them." An empty box for a third handgun—another 9mm weapon—was found in the hallway, as well.[5] Also lying on the floor were Johnson's two long guns and a white plastic grocery bag. The grocery bag contained ammunition

---

[4] The serial numbers on the firearms matched the serial numbers on the boxes. Inside one of the boxes, police also found a receipt in Johnson's name for the purchase of a Ruger pistol bearing the same serial number.

[5] The third handgun for which a box was located was not found in the house, in the car, or at the crash site.

boxes, "check boxes" bearing the name of a bank, numerous medication bottles, and two small jewelry boxes.

### III. Conviction and Sentencing

Based on this evidence, a jury convicted Townsend of first-degree murder and two counts of larceny of a firearm. He was sentenced to life in prison, with all but sixty years suspended, for murder and to twenty years in prison, with sixteen years suspended, for the larceny-of-a-firearm convictions.

### ANALYSIS[6]

### I. Refusal to Strike Juror for Cause

During voir dire, Juror 5 said she recalled hearing about the killing and reading about it in the local newspaper. When asked if she had an opinion about Townsend's guilt, she said she had not formed "a complete opinion," though she remembered that the victim lived alone and had been stabbed. Juror 5 indicated that she believed the particular facts would not prevent her from being impartial and volunteered that she would "listen and be fair." The juror then affirmed that she would consider only the evidence in the case to reach a verdict and "could be fair and impartial to everyone," including "the defendant" and "the Commonwealth."

Defense counsel made a motion to strike Juror 5 for cause based on her recollections of the incident and possible formation of an opinion regarding Townsend's guilt.[7] The trial court

---

[6] We assume without deciding that Townsend's briefs present adequate argument and authority to warrant our resolution of his assignments of error on appeal. *See* Rule 5A:20(e); *Abdo v. Commonwealth*, 64 Va. App. 468, 473 n.1 (2015).

[7] Juror 5 answered affirmatively when asked if she had previously served on a criminal jury in the Commonwealth. She also said that she had attended the same church as one of the witnesses and considered her a friend. The witness was Iris Clark, who saw Johnson at a store in Farmville the day before his body was found. Juror 5 stated that her acquaintance with Clark would not affect her ability to judge the case impartially. Defense counsel did not rely on these responses from Juror 5 in support of his motion to strike for cause.

characterized Juror 5's statements as reflecting her formation of a "casual impression" rather than a "deep and abiding conviction" about Townsend's guilt. It found that, in light of the juror's stated willingness to reach a verdict based on the evidence presented in court, her limited prior knowledge about the case did not preclude her from serving on the jury. Following these observations, the court refused to strike Juror 5 for cause.

"[J]uror impartiality is [a question] of fact," and a trial court's decision to seat a juror "is 'entitled to great deference on appeal' unless 'plainly wrong or unsupported by the record.'" *Harvey v. Commonwealth*, 76 Va. App. 436, 454 (2023) (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 121 (2014)). "Accordingly, the decision to retain or exclude a prospective juror will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion." *Taylor v. Commonwealth*, 61 Va. App. 13, 23-24 (2012) (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011)). "In conducting our review, we consider the juror's entire *voir dire*, not merely isolated statements." *Ramos v. Commonwealth*, 71 Va. App. 150, 157 (2019) (quoting *DeLeon v. Commonwealth*, 38 Va. App. 409, 413 (2002)); *accord Thomas v. Commonwealth*, 279 Va. 131, 164 (2010) (quoting *Lovitt v. Commonwealth*, 260 Va. 497, 510 (2000)).

Unquestionably, the "right to be tried by an impartial jury" is guaranteed under both the United States and Virginia Constitutions. *Northcraft v. Commonwealth*, 78 Va. App. 563, 587 (2023); *see* Code § 8.01-358 (outlining the process for safeguarding this right). "For that guarantee to be effective, persons accused of violating criminal laws must be provided with 'an impartial jury drawn from a panel . . . free from exceptions.' Every prospective juror must stand indifferent to the cause . . . ." *Taylor*, 61 Va. App. at 22-23 (quoting *Breeden v. Commonwealth*, 217 Va. 297, 300 (1976)). The guarantee requires that "any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused.'" *Northcraft*, 78 Va. App. at 587

- 6 -

(quoting *Breeden*, 217 Va. at 298). "If . . . a reasonable doubt [exists about] whether the juror possesses these qualifications, that doubt is sufficient to insure his exclusion." *Taylor*, 61 Va. App. at 23 (quoting *Breeden*, 217 Va. at 298). "These principles must be strictly applied, and when a prospective juror equivocates about whether he or she has formed a fixed opinion, the prospective juror should be stricken by the trial court." *Id.* For a juror's opinion to "disqualif[y] him," however, it must be one of such a "fixed character [that it] repels the presumption of innocence in a criminal case" and causes the juror to believe that "the accused stands condemned already." *Northcraft*, 78 Va. App. at 589 (emphasis omitted) (quoting *Lovos-Rivas*, 58 Va. App. at 61). Ultimately, therefore, "the 'test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial.'" *Ramos*, 71 Va. App. at 157 (quoting *Griffin v. Commonwealth*, 19 Va. App. 619, 621 (1995)).

Because the trial court has the opportunity to see and hear each juror respond to questions posed during voir dire, that court "is in a superior position to determine whether a prospective juror's responses during *voir dire* indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath." *Keepers v. Commonwealth*, 72 Va. App. 17, 42-43 (2020) (quoting *Green v. Commonwealth*, 262 Va. 105, 115 (2001)).

Townsend claims that Juror 5 equivocated when asked whether she had formed an opinion in the case based on what she had read about it. To the contrary, considering her voir dire *as a whole*, Juror 5 stated that she did not have a fixed opinion of guilt or innocence and could render a fair verdict based solely on the evidence even though she had some knowledge of the incident. "A potential juror who has knowledge of the case, even if such person has formed an opinion about the case, is entitled to sit on the jury if that opinion can be set aside." *Fields v.*

*Commonwealth*, 73 Va. App. 652, 670 (2021) (quoting *Thomas v. Commonwealth* 263 Va. 216, 231 (2002)).  This juror said she would "listen and be fair" and would consider only the evidence presented at trial when reaching her verdict.  She noted that she could be fair to both the defendant and the Commonwealth.  We therefore discern no basis for concluding that the trial court abused its discretion in refusing to strike Juror 5 for cause and will not disturb that ruling.

## II.  Sufficiency of the Evidence

Townsend challenges the sufficiency of the evidence to support his convictions for both first-degree murder and larceny of a firearm.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one."  *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024).  "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'"  *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680).  "[I]t is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion."  *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (second and third alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The "only 'relevant question'" for this Court on appeal "'is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"  *McGowan v.*

*Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

It is axiomatic that any element of a crime "may . . . be proved by circumstantial evidence such as a person's conduct and statements." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011). The manner in which the appellate court views this type of evidence is well established. "[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that [it] is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Pijor*, 294 Va. at 512 (first alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). "A conviction may rest on circumstantial evidence alone[. I]n fact, 'in some cases circumstantial evidence may be the only type of evidence [that] can possibly be produced.'" *Garrick*, 303 Va. at 183-84 (quoting *Pijor*, 294 Va. at 512).

And firmly established in our case law is the principle that the jury, not the appellate court, "determines which reasonable inferences should be drawn from the evidence[] and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017). In short, "[w]hether an alternate hypothesis of innocence is reasonable is a question of fact" for the jury, whose findings are "binding on [this Court] unless plainly wrong." *Maust v. Commonwealth*, 77 Va. App. 687, 700 (2023) (en banc) (alterations in original) (quoting *Wood v. Commonwealth*, 57 Va. App. 286, 306 (2010)).

It is in light of these legal principles that the Court reviews Townsend's sufficiency challenges.

## A. First-Degree Murder

Townsend argues that no evidence established the events that led to the killing or the duration of the attack on Johnson. He suggests, as a result, that the evidence fails to prove that the killing was premeditated, a necessary element of the crime.

"First degree murder is defined as a malicious killing accomplished by a willful, deliberate, and premeditated act." *Turner v. Commonwealth*, 23 Va. App. 270, 274 (1996); *see* Code § 18.2-32. Whether a killing was premeditated "is a question to be resolved by the finder of fact." *Schmitt v. Commonwealth*, 262 Va. 127, 143 (2001). Although proof of premeditation is a necessary element, "[t]he intent to kill need not exist for any specific [duration]." *Id.* Instead, premeditation may involve "an intent to kill that . . . exist[s] only for a moment." *Jackson v. Commonwealth*, 267 Va. 178, 204 (2004) (quoting *Green v. Commonwealth*, 266 Va. 81, 104 (2003)). Of course, "[i]ntent may be, and most often is, proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts." *Secret v. Commonwealth*, 296 Va. 204, 229 (2018) (alteration in original) (quoting *Viney v. Commonwealth*, 269 Va. 296, 301 (2005)). "[I]t is permissible for the fact finder to infer that every person intends the natural, probable consequences of his or her actions." *Id.* (quoting *Commonwealth v. Perkins*, 295 Va. 323, 330 (2018) (per curiam)). Specific factors relevant to proving premeditation include "the brutality of [the] attack; . . . [a] disparity in size and strength between the accused and the victim; . . . and . . . efforts to avoid detection," including "concealment of the victim's body." *Aldridge v. Commonwealth*, 44 Va. App. 618, 655-56 (2004) (citing *Epperly v. Commonwealth*, 224 Va. 214, 232 (1982)). Further, "evidence of a mortal wound inflicted by a deadly weapon with little or no provocation creates an inference from which the trier of fact may conclude that the killer acted with premeditation." *Morris v. Commonwealth*, 17 Va. App. 575, 578 (1994) (citing *Hodge v. Commonwealth*, 217 Va. 338, 343

(1976)). And motive, although "not an essential element of the crime, . . . is relevant and often most persuasive upon the question of the actor's intent." *Epperly*, 224 Va. at 232.

It is undisputed that Johnson died in a horrific attack inside his own home.[8] The attack involved a severe beating and nineteen stab wounds to his head, neck, torso, and arms. Penetrating strikes with the knife damaged his heart, one of his lungs, and other vital organs. Johnson sustained defensive wounds to his forearms and hands showing that he attempted unsuccessfully to ward off the blows. Additional evidence established that he was a frail seventy-five-year-old man in need of a blood transfusion *before* he was stabbed repeatedly by Townsend, his next-door neighbor.[9]

When Johnson's family discovered his body, his normally tidy home had been ransacked. His car and other valuables, including two handguns, were gone. Various other items of personal property, including ammunition and boxes for bank checks and jewelry, had apparently been staged in the hallway for later removal. Townsend was found driving Johnson's stolen car and had Johnson's wallet in his pocket. Adjacent to where Townsend crashed Johnson's car, police located additional evidence confirming an apparent robbery or larceny—two of the three guns missing from the gun boxes left open in Johnson's hallway and medication bottles bearing

---

[8] Townsend, on appeal, does not dispute the sufficiency of the evidence to prove that he killed Johnson. And he expressly concedes that the record contains "sufficient circumstantial evidence from which the jury could, and obviously did, infer that [he] was involved in [Johnson's] homicide."

[9] The evidence also proves that Johnson was five feet nine inches tall and weighed about 225 pounds. The record does not establish Townsend's precise age, height, weight, or build. *See generally Commonwealth v. Williams*, 262 Va. 661, 669 (2001) (recognizing that the appellant bears the burden of "present[ing] a sufficient record to permit a determination whether . . . an alleged error" occurred below). But Townsend's grandmother testified he was a "young pe[rson]," and the jury was able to view his appearance at trial and to consider it in reaching a verdict. *See Drexel v. Commonwealth*, 80 Va. App. 720, 752 (2024) (recognizing that the jury could judge the defendant's age from his appearance); *Traish v. Commonwealth*, 36 Va. App. 114, 133 (2001) (noting the jury observed the defendant's "build").

Johnson's name that he usually kept in his home. The evidence supported a finding that the brutal attack was an unprovoked one committed to facilitate Townsend's commission of a robbery or larceny.

Townsend also engaged in various activities designed to avoid or delay detection. After the brutal slaying, Townsend hid Johnson's body in the basement of Johnson's home under some rugs. He then fled from the police during an attempted traffic stop while driving Johnson's stolen car. Beyond that flight, police found additional evidence at the crash site reflecting his efforts to avoid detection. A bag that had identification belonging to Johnson in it also contained blood-stained paper towels and an empty bottle of Clorox, tending to show that Townsend had tried to clean up after the killing.

Considering the brutality of the attack, the disparity in strength between the two men, the motive of either robbery or larceny, and Townsend's clear efforts to avoid detection, the finder of fact could easily conclude beyond a reasonable doubt that Townsend's killing of Johnson was premeditated. *See King v. Commonwealth*, 243 Va. 353, 366-67 (1992) (affirming a finding of premeditation where the "much larger" defendant "lured" the victim to a secluded location to rob her, "viciously" hit and stabbed her, "'wiped down' her car" to mask his identity, left the jurisdiction, and named a different person as the killer); *Epperly*, 224 Va. at 232 (affirming a finding of premeditation where the evidence proved that when the defendant "realized [the victim] was a potential witness against him on a charge of sexual assault," he "resolved to silence her permanently, to hide her body, to dispose of the evidence, and to escape detection"). Consequently, the evidence supports Townsend's conviction for first-degree murder.

## B. Larceny of Firearms

Townsend challenges his two convictions for larceny of a firearm in violation of Code § 18.2-95. Larceny is "the wrongful or fraudulent taking of personal goods of some intrinsic

- 12 -

value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently." *Marsh v. Commonwealth*, 57 Va. App. 645, 650 (2011) (quoting *Carter v. Commonwealth*, 280 Va. 100, 104-05 (2010)). The firearms Townsend was convicted of stealing were found outside Johnson's car after Townsend fled from police during an attempted traffic stop and wrecked the stolen car. Townsend suggests that the evidence did not prove he took the firearms and it was "mere speculation as to how or when the[y] got into the vehicle." As a result, he suggests the evidence did not establish that he "knew . . . they were [present]" or that he "exercised dominion and control" over them. We disagree.

Larceny involves a taking, which requires proof of possession. *See Bryant v. Commonwealth*, 248 Va. 179, 183 (1994). Possession may be actual or constructive. *See Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009); *see also Archer v. Commonwealth*, 26 Va. App. 1, 13 (1997) (recognizing that constructive possession principles apply when considering the sufficiency of the evidence supporting a conviction for larceny of a firearm). "[T]o establish constructive possession . . . , 'the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm[s] and that the[y] w[ere] subject to his dominion and control.'" *Raspberry v. Commonwealth*, 71 Va. App. 19, 30 (2019) (quoting *Smallwood*, 278 Va. at 630). This analysis requires the appellate court to "consider 'the totality of the circumstances disclosed by the evidence.'" *Archer*, 26 Va. App. at 12 (quoting *Womack v. Commonwealth*, 220 Va. 5, 8 (1979)).

Here, the evidence proved that Townsend was the person who brutally stabbed and killed Johnson in his own home. After the killing, it was apparent that Johnson's home, which was normally neat and organized, had been ransacked. The two handguns in question, a Ruger and a Taurus, were missing from the home. Police found boxes that bore the serial numbers for the

two guns, but the boxes were empty and had been discarded in the middle of Johnson's hallway, clearly not the location in which they were ordinarily kept. Near the empty boxes were other items that appeared to have been staged for a later taking.

The Ruger and Taurus were recovered where Townsend crashed the stolen car after his unexpected encounter with the police. Townsend was the only person in the car at that time, and no evidence suggested anyone else had been in the car with him. Also at the collision scene, the police recovered numerous other items belonging to Johnson, including several bearing his name. Considering all of the evidence, a reasonable finder of fact could conclude that Townsend removed the Ruger and Taurus firearms from their boxes and discarded the boxes in haphazard fashion in Johnson's hallway. The jury could further infer that he then took the firearms and other items from Johnson's house, along with the car, as he fled the scene of the murder. The evidence proved Townsend was aware of the presence and character of the firearms and exercised dominion and control over them, as required to prove constructive possession.

As a result, the evidence was sufficient to support his two convictions for larceny of a firearm.

CONCLUSION

We hold the trial court did not abuse its discretion in refusing to strike the challenged juror for cause. We also conclude the evidence proved that Townsend acted with the premeditation necessary for first-degree murder. Finally, the totality of the circumstances support the jury's finding that he constructively possessed Johnson's two firearms as needed to sustain his two larceny-of-a-firearm convictions. For these reasons, this Court affirms the trial court's judgment.

*Affirmed.*