COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Malveaux and Callins


MICHAEL ALLEN FAULKNER

                                                    MEMORANDUM OPINION*
v.        Record No. 0117-24-1                         PER CURIAM
                                                      APRIL 15, 2025
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                            Everett A. Martin, Jr., Judge

              (B. Thomas Reed, on brief), for appellant.  Appellant submitting on
              brief.

              (Jason S. Miyares, Attorney General; Brooke I. Hettig, Assistant
              Attorney General, on brief), for appellee.


        A jury convicted Michael Allen Faulkner of first-degree murder and use of a firearm in

the commission of a felony.  Thereafter, the trial court sentenced Faulkner to 66 years of

incarceration, suspending 3 years.  On appeal, Faulkner contends that the trial court erred in

denying his motion to strike the Commonwealth's evidence because it did not prove his guilt

beyond a reasonable doubt.  After examining the briefs and record in this case, the panel

unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit";

additionally, "the dispositive issue or issues have been authoritatively decided" and "the appellant

has not argued that the case law should be overturned, extended, modified, or reversed."  Code

§ 17.1-403(ii)(a)-(b); Rule 5A:27(a)-(b).  Accordingly, we affirm the trial court's judgment.

_____
        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

On the evening of May 30, 2020, Shelvin Alston and Michael Faulkner were in an altercation outside a Tinee Giant convenience store in the City of Norfolk. Faulkner was wearing a white t-shirt, black pants, a black hat worn backward, and a gold chain. The store's surveillance video showed the two in an altercation described as "a whole lot of joshing around" and "everybody was like going around pulling and, you know, going around like in a circle." The disturbance, which lasted about two to three minutes, was loud enough that people at a nearby bus stop stood and looked toward the store. The incident ended when several men placed themselves between Alston and the advancing Faulkner, physically restraining him.

Following the incident, Alston, described as a "slim guy with the dreads" wearing a white t-shirt, left the Tinee Giant alone on foot and ran across the street to Princess Anne Road. Less than 30 seconds later, Faulkner entered the driver's seat of a white SUV, and, within a few minutes, Faulkner neared the exit of the Tinee Giant parking lot. The white SUV and another vehicle[2] left the parking lot quickly and drove onto Princess Anne Road in the same direction that Alston had run. A few minutes later, a witness, Carlos Cortes, saw two men arguing "face to face" as Cortes walked along East Princess Anne Road.

---

[1] On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Konadu v. Commonwealth*, 79 Va. App. 606, 609 n.1 (2024) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Id.* (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

Additionally, parts of the record in this case were sealed. "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Va. State Bar*, 302 Va. 234, 240 n.2 (2023).

[2] A witness testified that there were two, possibly three, vehicles in total that drove towards Princess Anne Road.

Less than three minutes after Faulkner and the other vehicle left the parking lot, several witnesses heard gunshots. Cortes ran for cover, called 911 at 7:17 p.m., and returned to the scene to render CPR. Eddie Clayton, a witness who had seen the earlier altercation, ran to the scene of the shooting and described seeing Alston "laying on the ground" with two people performing CPR. There was a bullet protruding from the right side of Alston's chest and blood on his head and mouth. Joshua Rogers, who was at his home across the street, looked outside after hearing the gunshots and saw a "husky," "African-American male wearing a white shirt [and] black pants" "brisk[ly] walk[ing]" toward a "white SUV, 4Runner type, with like gold or brown trim" which was approximately 10 yards from Alston's body. The "husky" man got in on the passenger side, and the SUV drove toward East Virginia Beach Boulevard.

When emergency medical services arrived at 7:25 p.m., they found Alston with a "gunshot wound to the head and one gunshot wound to the chest." Alston had no pulse and was not breathing; he was pronounced dead at the scene at 7:28 p.m.

Alston's autopsy revealed four gunshot wounds: two wounds to the head and two to the torso. The medical examiner determined that the cause of death was multiple gunshot wounds, although Alston could have survived if the last gunshot had been the only one he sustained. The medical examiner could not determine the distance from which the shots were fired, although they did not look like "contact or close range" wounds.

Norfolk Police Department forensic officers and detectives recovered three 9-millimeter FC Luger casings at the scene, which were submitted to the Department of Forensic Science (DFS) for ballistic analysis.[3] DFS Forensic Scientist Helen Lake determined that the three casings were fired from the same firearm. Absent a firearm, Lake could not say whether a bullet

---

[3] The parties stipulated to the proper chain of custody of items submitted to the Department of Forensic Science, shown on the certificate of analysis FS T20-4346.

- 3 -

recovered from Alston's chest during the autopsy was fired from the same gun as the three shell casings.

Norfolk Police Detective Kyle Austin collected surveillance and security video footage from a private home, a nearby Fire Union Hall, and a gas station. The residential video, approximately two blocks from the crime scene, showed a white Toyota 4Runner leaving the area at a "high rate of speed" toward Virginia Beach Boulevard at 7:16:06 p.m. Video from the Fire Union Hall and the gas station showed the white Toyota 4Runner "traveling east on Virginia Beach Boulevard" "minutes" after the shooting. Detective Austin knew that there had been an altercation at the Tinee Giant earlier that evening, and he collected that surveillance video as well.

Based on witness statements, Detective Austin compared photographs of Faulkner with the Tinee Giant images. He also determined that Faulkner had worked with the City of Chesapeake "attached to work cleanup crews" supervised by the Sheriff's Office. Detective Austin showed the interior video from the Tinee Giant to deputies individually, with some identifying Faulkner as the man in the video. For example, Chesapeake Sheriff's Deputy John Warren, who had worked with Faulkner, recognized him in the Tinee Giant video as the man in a white t-shirt with his hat on backwards. Deputy Warren also recognized Faulkner's voice in the video as the one "that was louder than everyone else." He also recognized Faulkner's voice as the one in the video stating, "look, I don't want any trouble."

Norfolk homicide detective Michael Walsh developed Faulkner as a person of interest "[b]ased on witness statements . . . clothing descriptions, and . . . the video." Detective Walsh also got a telephone number for Faulkner from employment records and obtained a search warrant for the phone's cell records.

- 4 -

Crasinda Johnson, the mother of Alston's two daughters, reviewed the Tinee Giant video and recognized Faulkner as someone she had been friends with on Facebook. She contacted Detective Austin and provided screenshots of her and Faulkner's interactions on Facebook. Johnson identified Alston with Faulkner in a screenshot from the Tinee Giant video.

FBI Special Agent Christopher Goodrich, of the Cellular Analysis Survey Team (CAST), reviewed the records from Faulkner's cell phone and mapped its location on the evening of May 30, 2020. The records showed that Faulkner's phone received messages through a cell tower near the Tinee Giant at 6:03 p.m., 6:21 p.m., and 6:32 p.m. At 6:34 p.m., a call was placed from the phone, most likely using the tower closest to the Tinee Giant. Special Agent Goodrich's review showed that at 7:04 p.m., the phone was located to the west of the crime scene on Oaklawn near the residence with the video. Between 7:18 p.m. and 7:20 p.m., the phone accessed a tower to the east of East Virginia Beach Boulevard and appeared to move from west to east around the crime scene.

After 7:20 p.m., Faulkner's phone went off the network and did not reappear until June 2, 2020, at approximately 6:30 p.m. Based on Faulkner's typical usage, this was the only time Special Agent Goodrich "observed that phone being off the network in that manner, for a long period of time," and that there was "no other time period where that was normal behavior for that phone." When the phone number reappeared on the network, the signal indicated that the "hardware [had been] changed or the SIM [had been] changed."

At the time of his initial arrest on July 8, 2020, Faulkner was wearing a gold medallion necklace that matched the one he had on in the Tinee Giant video. During a subsequent search of Faulkner's vehicle, Norfolk Police Detective Emmanuel Zablan collected three cellular telephones: one from the driver's floor mat, another from the front passenger seat, and the third from the inside of the center console. He also recovered a letter addressed to Faulkner from the

Virginia Employment Commission from the driver's interior pocket in the door. The telephone from the driver's floorboard matched Faulkner's cell number.

Faulkner was indicted and tried on charges of first-degree murder, use of a firearm in the commission of a felony, and possession of a firearm by a violent convicted felon.[4] At trial, Faulkner moved to strike the Commonwealth's evidence at the end of its case in chief, claiming that all the evidence was circumstantial and that none of it tied Faulkner to the shooting. The trial court denied the motion, ruling that "there [was] enough to go to the jury." The defense rested and then renewed his motion to strike, which the trial court denied. Thereafter, the jury convicted Faulkner. Faulkner appeals.

## ANALYSIS

It is well-established in Virginia law that "[j]ury verdicts approved by the trial court are 'the most favored position known to the law.'" *Nestler v. Scarabelli*, 77 Va. App. 440, 462 (2023) (quoting *Bitar v. Rahman*, 272 Va. 130, 137 (2006)); *see also Wagoner v. Commonwealth*, 63 Va. App. 229, 247 (2014) ("[A] party who comes before [an appellate court] with a jury verdict approved by the trial court 'occupies the most favored position known to the law.'" (alterations in original) (quoting *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57 (1992))). Further, "[w]hen an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original

---

[4] On Faulkner's motion, the trial court severed the possession of a firearm offense from the other charges. Following his convictions and sentencing, and on the Commonwealth's motion, the trial court entered a nolle prosequi on the possession charge.

proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Faulkner argues that the Commonwealth's case is purely circumstantial, was not sufficient to prove his guilt, and does not "eliminate all reasonable theories of innocence and get to the point of proving his guilt beyond a reasonable doubt." We disagree.

"[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Pijor*, 294 Va. at 512 (alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). "The Commonwealth need exclude only reasonable hypotheses of innocence that 'flow from the evidence itself, and not from the imagination' of the defendant." *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (quoting *Pijor*, 294 Va. at 512).

"While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Pijor*, 294 Va. at 512-13 (alteration in original) (quoting *Muhammad v.*

*Commonwealth*, 269 Va. 451, 479 (2005)). So "long as 'a rational factfinder could reasonably reject [the appellant's] theories in his defense and find that the totality of the suspicious circumstances proved [his guilt] beyond a reasonable doubt,' the appellate court must affirm the conviction." *Clark v. Commonwealth*, 78 Va. App. 726, 752 (2023) (alterations in original) (quoting *Park v. Commonwealth*, 74 Va. App. 635, 654 (2022)).

Here, the evidence demonstrated that Faulkner and Alston were in an altercation which only ended when bystanders forcibly restrained Faulkner from advancing towards Alston. Witnesses described Alston as walking, then running, away from the Tinee Giant. Moments later, security footage showed Faulkner get into a white SUV, speed out of the parking lot, and drive in the same direction that Alston ran. A short distance from the Tinee Giant, Cortes saw two men arguing "face to face" just before he heard gunshots. Several witnesses to the Tinee Giant altercation stated that they heard the gunshots within minutes after Faulkner left the parking lot in the white SUV and some identified Alston as the victim. Other witnesses described a "husky," "African American" man wearing a white t-shirt and black pants entering a white Toyota 4Runner SUV approximately 10 yards away from Alston and leaving in the direction of Virginia Beach Boulevard. Surveillance video shows the white SUV driving at a high rate of speed immediately following the gunshots.

In addition to the witness statements and video footage, cellular phone data showed Faulkner's phone in the immediate vicinity up to the time of the shootings, and then go off the network for several days; this was a pattern inconsistent with his usage history. When Faulkner was arrested, he had a different physical cellular telephone in his possession, but the phone number was the same as the one whose movements were tracked for the night of the murder.

Recognizing the totality of these circumstances, the jury, as fact finder, permissibly rejected Faulkner's theory of innocence. Indeed, despite Faulkner's argument that there is reasonable doubt of his guilt, the jury properly found "by a process of elimination that the evidence does not contain a

reasonable theory of innocence." *Ray v. Commonwealth*, 74 Va. App. 291, 308 (2022) (quoting *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017)).

CONCLUSION

Having reviewed the evidence in the light most favorable to the Commonwealth, the evidence was sufficient to prove that Faulkner was guilty beyond a reasonable doubt of first-degree murder and use of a firearm in the commission of a felony. Therefore, and for the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*