UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, White and Senior Judge Annunziata

STEVEN RANDALL WILLIAMS

v.       Record No. 0829-24-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE KIMBERLEY SLAYTON WHITE
NOVEMBER 25, 2025

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Michael E. Levy, Judge

(David B. Hargett; Hargett Law, PLC, on brief), for appellant.

(Jason S. Miyares, Attorney General; Lauren C. Campbell, Assistant
Attorney General, on brief), for appellee.


A jury convicted Steven Randall Williams of abduction with intent to defile, in violation

of Code § 18.2-48(ii). The trial court sentenced Williams to 60 years' imprisonment, with 27

years suspended. On appeal, Williams challenges the sufficiency of the evidence to sustain his

conviction. Finding no error, we affirm the trial court's judgment.[1]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the facts and legal arguments are adequately presented in
the briefs and record, and the decisional process would not be significantly aided by oral
argument." *See* Code § 17.1-403(ii)(c)**;** Rule 5A:27(c).

BACKGROUND[2]

Fourth-grade elementary student, R.G.,[3] rode the bus to and from school. Her bus stop was about two blocks from her house. Typically, her parents would accompany her to and from the bus stop. In January 2022, however, she began walking home from the bus stop on her own.

On the afternoon of January 28, 2022, as she had done for the prior couple of weeks, R.G. got off the bus with another neighborhood child and they started walking home. The other child's house was closer to the bus stop, so R.G. had to walk alone for a short distance. As R.G. made her way home alone, a black Buick Regal pulled up and stopped in front of her.

Williams exited the Buick and asked R.G. for directions. R.G. pointed Williams in the direction about which he had inquired. Williams thanked R.G. and she began walking back toward her house. Suddenly, Williams grabbed R.G. by her legs, picked her up, and rushed toward his car. R.G. screamed as Williams ordered her to be quiet and forced her into the passenger seat of the car. Before Williams could get to the driver's seat, R.G. opened the door and started running home. Williams got in the Buick and sped away.

R.G.'s father (father) was home when R.G. came running into the house screaming, "[D]ad, someone tried to grab me!" R.G. explained frantically to father that someone had tried to abduct her. Father ran outside and called 911. Stafford County Sheriff's Deputies Assur and Phillips responded to the 911 call and spoke with R.G. and father about the incident. R.G. identified Williams as a white man with facial hair. A neighbor who witnessed the end of the incident, and

---

[2] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

[3] We refer to the minor by her initials to afford her privacy.

saw R.G. running from Williams's car, gave the deputies an initial description of the car as "a black Buick Regal." They canvassed the neighborhood and were able to recover images of Williams's car from a neighbor's surveillance camera.

Major Kimmitz checked the Sheriff's record management system for any previous suspect vehicle descriptions matching a black Buick Regal. Major Kimmitz discovered Williams's information associated with a black Buick Regal. Captain Worcester obtained the surveillance footage from Deputy Assur and was able to see the last four digits of the license plate. He then cross-referenced the partial plate number and physical characteristics of the Buick to decipher the Buick's VIN number, from which he was able to find the full registration information and license number. The registered address matched the address Major Kimmitz had found in the record management system. Deputy Weatherholtz went to the address. There, he found the black Buick Regal parked in the driveway of the residence at the location.

Around 5:15 p.m., Deputies Weatherholtz, Lee, and Detective Sanchez were gathered at the subject address. Deputy Lee and Detective Sanchez approached the house and knocked. Williams's father answered. He informed the officers that Williams had been driving the Buick earlier that day, that Williams was there at the house, and he invited the officers inside. The officers waited in the kitchen along with Williams's father, mother, and toddler son. Williams's father called down the basement steps for Williams to come up. After a long "awkward" wait, Williams eventually came upstairs. Williams's hair and face were freshly shaven. After a brief, unproductive conversation with Williams, the officers left.

Detective Sanchez watched the house to make sure Williams did not leave while the police obtained a search warrant. Upon obtaining a search warrant, the Sheriff's SWAT team responded to Williams's house and arrived around 9:00 p.m. Police vehicles, and around 50 officers, surrounded

the house with lights flashing and ordered the occupants out of the house. Williams's parents exited. Officers entered the house and swiftly removed Williams's son.

Back outside, officers continued to try and negotiate Williams's surrender. Efforts to communicate or contact Williams were fruitless, as were attempts to force him out with chemical agents. A dozen officers and a K-9 unit eventually went into the house to find Williams. The K-9 indicated toward a freezer in the basement. Officers moved the freezer and found Williams inside a hole cut out in the wall behind the freezer. The officers apprehended Williams shortly after 2:00 a.m. Multiple cell phones and laptops were recovered during the initial search of the house that night.

Police executed a second search warrant at the house a few days later to recover Williams's personal cell phone specifically. Williams's father had found the phone buried under insulation in the wall where Williams had been hiding. The phone had been severely and intentionally smashed to the extent that digital information was mostly irretrievable. Inside the Buick, officers found two unopened, unexpired condoms in the center console. In the trunk were three loose black zip ties and a roadside emergency kit.

At trial, R.G. detailed the events of January 28. Officers testified to the extensive measures that Williams went through to evade arrest. The condoms and the zip ties found in the Buick were entered into evidence. Williams proved at trial that the particular roadside kit found in his trunk came with three black zip ties. Williams moved to strike the evidence, arguing that the only evidence presented on the intent to defile was "two old condoms." The trial court denied the motion, rejecting Williams's argument and finding that the condoms were not expired and were "within arm's reach" in the middle console. The jury found Williams guilty of abduction with the intent to defile. This appeal followed.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Williams's sole claim is that the evidence was insufficient to prove intent to defile. He argues that there was no evidence, by his actions or otherwise, demonstrating that he had a sexual interest in R.G. He highlights the fact that police found no evidence of sex crimes on the cell phones and laptops seized from his house. Similarly, he argues that one would have to be "engaged in gross speculation" to infer that Williams smashed his cell phone to destroy such evidence. He asserts that the presence of condoms and zip ties "cannot" establish the intent to defile.

- 5 -

An intent to defile requires proof of the defendant's specific intent to sexually molest the victim. *Turner v. Commonwealth*, 56 Va. App. 391, 421 (2010). "Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case." *Id.* at 422 (quoting *Ridley v. Commonwealth*, 219 Va. 834, 836 (1979)). "A defendant's intent may be proved by circumstantial evidence, including the defendant's statements and conduct." *Welch v. Commonwealth*, 79 Va. App. 760, 768 (2024). "Whether the defendant has the required intent is a question for the trier of fact." *Id.*

Williams forcibly grabbed R.G. from the sidewalk and shoved her into his car. He had condoms in the center console, readily accessible. Though Williams presented evidence that the roadside emergency kit in his trunk came with black zip ties, the jury was permitted to infer that the zip ties in his trunk came from elsewhere, or that he had nefarious plans to use them. Likewise, the jury was permitted to infer that Williams's phone contained probative evidence of his intent until he destroyed it, because "inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020). "As an appellate court, we are not permitted to reweigh the evidence." *Suhay v. Commonwealth*, 75 Va. App. 143, 158 (2022) (quoting *Harper v. Commonwealth*, 49 Va. App. 517, 521 (2007)). Our deferential standard "applies not only to findings of fact, but also to any reasonable and justified inferences the fact finder may have drawn from the facts proved." *Sullivan*, 280 Va. at 676. Accordingly, because a rational factfinder could infer from the circumstances that Williams intended to defile R.G., the trial court's ruling must be upheld.

### CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*